REALTY DEVELOPING CO., INC. *vs.* WAKEFIELD READY-
MIXED CONCRETE CO., INC.

Middlesex. May 10, 1951. — June 28, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Contract,* Performance and breach. *Practice, Civil,* Exceptions: suffi-
ciency of bill, what questions open. *Words,* "Breach."

Upon an exception by the defendant to the entry of a verdict for the
plaintiff under leave reserved following a jury's verdict for the de-
fendant in an action of summary process by a lessor against the lessee
to recover possession of the leased premises under a provision of the
lease permitting the plaintiff to enter and repossess the premises and
terminate the lease for breach of covenant by the defendant, an omis-
sion from the bill of exceptions of a statement that it contained all the
evidence material to the questions presented precluded sustaining of
the exception on the ground that there did not appear to have been a
termination of the lease by entry, but did not preclude sustaining it
on the ground that the evidence which was set forth in the bill of ex-
ceptions warranted a finding that there had been no breach of covenant
by the defendant and warranted the jury's verdict for the defendant.
A breach of a contract is a failure to perform for which legal excuse is
lacking.
Findings that a concrete company had legal excuse for failing to order
certain amounts of sand and gravel from a sand and gravel company as
required by a contract between the companies, and that there had
not been a breach of the contract by the concrete company through
such failure, were warranted by evidence of certain conduct of the
sand and gravel company and its president and general manager re-
specting deliveries to the concrete company and of the effect of such
conduct upon the operation of the concrete company's plant.

SUMMARY PROCESS. Writ in the Fourth District Court of
Eastern Middlesex dated March 22, 1950.

Upon appeal to the Superior Court, the action was tried
before *O'Connell,* J.

*J. J. Fitzpatrick,* for the defendant.
*C. P. Bartlett,* (*B. Beck* with him,) for the plaintiff.

WILKINS, J. In this action of summary process brought

under G. L. (Ter. Ed.) c. 239, § 1, as amended by St. 1941, c. 242, § 1, to recover possession of a concrete processing plant on Lexington Street, Burlington, there was a judgment for the defendant in the District Court. The plaintiff appealed to the Superior Court, where the jury returned a verdict for the defendant. The judge entered a verdict for the plaintiff under leave reserved, and the defendant excepted.

The premises were leased by the plaintiff to the defendant under a writing dated November 14, 1946, for a term of five years with an option to the lessee to renew. Material provisions of the lease are: "And the said lessee does hereby further covenant with the lessor that the lessee will not breach the contract made simultaneously herewith between the Acme Sand & Gravel Co. Inc., a Massachusetts corporation, and the [lessee] Wakefield Ready-Mixed Concrete Co. Inc." "Provided also and these presents are upon this condition, that if the lessee shall neglect or fail to perform or observe any of the covenants contained in these presents, and on the lessee's part to be performed or observed . . . then . . . the lessor lawfully may, immediately, or at any time thereafter, and without demand or notice, enter into and upon the said premises . . . and repossess the same as of its former estate, and expel the lessee . . . and upon entry as aforesaid this lease shall determine . . . ." The latter sentence created an estate upon condition. *Fifty Associates* v. *Howland*, 11 Met. 99, 100, 102–103. The provision for reëntry is the distinctive characteristic of such an estate. *Attorney General* v. *Merrimack Manuf. Co.* 14 Gray, 586, 612.

The contract between the defendant and Acme Sand & Gravel Co., Inc. (hereinafter called Acme), referred to in the lease, was amended on February 28, 1949. The plaintiff's theory is that the defendant committed a breach of that contract by failing to order certain minimum amounts of sand and of gravel as therein agreed. At the trial the defendant admitted that it did not order these quantities, "but asserted the actions of the Acme Sand & Gravel Co.,

327 Mass. 535                                            537

Realty Developing Co. Inc. v. Wakefield Ready-Mixed Concrete Co. Inc.

Inc., induced this failure to order." This admission, the plaintiff contends, was conclusive upon the defendant that there was a breach of the contract.

° The bill of exceptions states that issues raised by the defendant and presented by the bill are (1) whether a breach by the defendant of the Acme contract "is a sufficient ground in law to operate as a forfeiture of the defendant's leasehold"; and (2) whether the conduct of Acme in its relations with the defendant "justified a breach by it" of the Acme contract. The bill makes no statement that it contains all the evidence material to the questions presented. *Perry* v. *Hanover*, 314 Mass. 167, 169. *Gurll* v. *Massasoit Greyhound Association, Inc.* 325 Mass. 76, 77. *Irving* v. *Bonjorno, ante,* 516, 518. This omission precludes resting our decision upon what appears from this record to be a fatal absence of any termination of the tenancy by entry which is essential to the right to maintain an action of summary process under G. L. (Ter. Ed.) c. 239, § 1, as amended. *Fifty Associates* v. *Howland,* 11 Met. 99, 100, 102–103. *Guild* v. *Richards,* 16 Gray, 309, 317, 322. *Shannon* v. *Jacobson,* 262 Mass. 463, 467, 468–469. *Markey* v. *Smith,* 301 Mass. 64, 68–69, 71. *Ratner* v. *Hogan,* 251 Mass. 163, 165. *Dayton* v. *Brannelly,* 255 Mass. 551, 552. *Cummings* v. *Wajda,* 325 Mass. 242, 243. But this omission will not be controlling if the evidence in the record required the submission of the case to the jury. *Swistak* v. *Paradis,* 288 Mass. 377, 380.

The defendant's covenant not to "breach" the Acme contract does not have the one sided meaning contended for by the plaintiff. "The expression 'breach of contract' is confined to wrongful conduct. The promisor does not necessarily commit a breach of contract if he fails to perform his promise. Thus, under the definition in the Section, nonperformance of a contract, if justified, is not a breach." Restatement: Contracts, § 312, comment a. A breach of contract is a failure to perform for which legal excuse is lacking. *Friedman* v. *Katzner,* 139 Md. 195, 201. Williston, Contracts (Rev. ed.) § 1288. Accordingly, the defend-

ant did not commit a breach of the Acme contract unless its conduct was wrongful or lacking legal excuse.

The amended contract of February 28, 1949, obligated the defendant to order not less than 3,750 tons of sand and not less than 5,000 tons of gravel during the next twelve months. The actual deliveries were 1,738 tons of sand and 2,284 tons of gravel. The Acme gravel banks were "across the street" from the leased premises.

There was evidence from which the jury could have found these facts. The defendant's president, one Randlett, who was in charge of the plant at Burlington, ordered more tons than were delivered. Such orders were always placed by telephone, the only feasible method. No deliveries were made from the middle of July, 1949, to October 4, 1949, because Acme claimed, and the defendant denied, that the defendant owed Acme $3,200. The claim was compromised on October 4 by the payment of $1,600 to Acme by the defendant. After that date it took the defendant ten days to resume operations. In October there were delivered 558 tons, in November 1,694 tons, and in December 428 tons. The "defendant ordered much more than that." After October whenever delivery was made the defendant received one to four loads less than ordered. A load on one of the delivery trucks used was eleven to fifteen tons. In November Acme would not fill the bins more than two thirds or three fourths full. The defendant could not plan on how much concrete to sell. Sand and gravel must come every fifteen minutes into a concrete plant. One cannot tell three hours ahead what is needed. The defendant had to shift most of the business from Burlington to another plant it had in Wakefield, which reduced the amount it could use. The defendant's plant was closed every winter in January, in February, and until the middle of March. This was a reason why the defendant needed so much tonnage in October and November.

One Ruggiero, the president and general manager of Acme, was an officer of the plaintiff. There was testimony by a driver for Acme and by an independent truckman

who delivered for Acme from which it could have been found that Ruggiero endeavored to delay deliveries to the defendant by neglecting to weigh loads, by instructing these drivers to go to the defendant's plant as quietly as possible and wait until someone appeared to sign for the delivery, and by sending small loads. Ruggiero was also "connected with" an Acme concrete company, organized in February, 1950, which is engaged in the ready made concrete business. There was in evidence a notice Ruggiero sent out to the trade in February, 1950, announcing the entry of Acme Concrete, Inc., into the "transit mix concrete business, with plants at Maple St., Stoneham and Lexington St., Burlington," and bearing the statement, "owned by the operators of Acme Sand & Gravel Co., Inc." When the notice was sent out Acme Concrete, Inc., did not have a concrete mixing plant in Stoneham or in Burlington.

The jury could have found that the defendant's conduct in not ordering the minimum amounts called for in the contract was not wrongful or lacking in legal excuse. In that event there was no breach by the defendant of the Acme contract and no violation of the lease from the plaintiff.

The exceptions are sustained. The verdict for the plaintiff entered under leave reserved is set aside. The original verdict returned by the jury is to stand, and judgment is to be entered for the defendant on that verdict.

*So ordered.*