Montie M. REYNOLDS and Sally J. Reynolds, Appellants (Plaintiffs below),

v.

Mary G. TICE, Appellee (Defendant below),

Charles T. Tice (Defendant below).

Charles T. TICE, Appellant (Defendant below),

v.

Montie M. REYNOLDS and Sally J. Reynolds, Appellees.

Nos. 4963, 5043.

Supreme Court of Wyoming.

May 21, 1979.

Rehearing Denied June 19, 1979.

Robert N. Williams, Jackson, and P. Richard Meyer, of Meyer, Vucichevich & Cimala, P. C., Phoenix, Ariz., appeared on briefs, and Mr. Meyer appeared in oral argument on behalf of Montie M. Reynolds and Sally J. Reynolds.

Larry L. Jorgenson, Jackson, and Phillip A. Gillis, of Gillis, Louisell & Berg, Detroit, Mich., appeared on briefs, and Mr. Gillis appeared in oral argument for Charles T. Tice in Case No. 5043.

Timothy J. Bommer, Jackson, appeared on the brief and appeared in oral argument for Mary G. Tice in Case No. 4963.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE, and ROONEY, JJ.

ROONEY, Justice.

Plaintiffs (appellants in Case No. 4963 and appellees in Case No. 5043) brought an action for damages against defendant Mary G. Tice (appellee in Case No. 4963) and defendant Charles T. Tice (appellant in Case No. 5043) founded on fraud and deceit and on breach of contract. Plaintiffs, as buyers, entered into an agreement with defendants, as sellers, for the purchase and sale of an oil and gas and related products business in Jackson, Wyoming, together with all of its assets. Defendant Mary G. Tice was granted a motion for summary judgment on the grounds that there was not a genuine issue as to the material facts concerning her involvement in the transaction and that she was entitled to judgment as a matter of law. The court expressly determined that there was no just reason for delay and directed entry of the judgment. Plaintiffs' appeal from this judgment was docketed as Case No. 4963. The matter proceeded to trial against defendant Charles T. Tice and the jury returned a $126,000 verdict for plaintiffs. Judgment was entered thereon. Defendant Charles T. Tice's appeal from this judgment was docketed as Case No. 5043. The two cases were consolidated on appeal.

We will affirm the summary judgment in favor of defendant Mary G. Tice in Case No. 4963, and we will reverse the judgment in favor of plaintiffs in Case No. 5043, remanding the case for a new trial.

Facts necessary for determination of the pertinent issues will be set forth throughout the opinion as required.

CASE NO. 4963

In reviewing an appeal from the granting of a summary judgment and in determining the existence of a genuine issue of material facts, the court must inquire from the viewpoint most favorable to the party opposing

the motion, *Timmons v. Reed*, Wyo., 569 P.2d 112 (1977). Facts asserted by such party and supported by affidavits or other evidentiary material must be taken as true, *Trautwein v. Leavey*, Wyo., 472 P.2d 776 (1970), and be given every favorable inference, which may be reasonably and fairly drawn from them, *Bluejacket v. Carney*, Wyo., 550 P.2d 494 (1976).

■ Even doing so, the pertinent record does not reflect a controversy with reference to the facts which are material to the claim that defendant Mary G. Tice breached the contract. The material facts concerning this claim are contained in the contract itself and in the addendum to it. There is no dispute over the terms of the contract or of the addendum. Although defendant Mary G. Tice was named in the contract as a party thereto and although she signed it, the addendum, which was also signed by both plaintiffs and both defendants, reflected a recognition that defendant Mary G. Tice was named therein only to assure the conveyance of "free title, unencumbered by any homestead or dower rights or other similar rights by virtue of her marital status."[1] Deposition testimony is to the effect that defendant Mary G. Tice was not a partner in the business and had nothing to do with its operation.

From these facts, reasonable men cannot differ in an understanding from them that additional performance under the contract by defendant Mary G. Tice was not expected. Therefore, she could not act, or fail to act, in breach of its terms.

The minds of the parties met on the thing to be done, i. e., plaintiffs to pay defendant Charles T. Tice and Charles T. Tice to transfer the business and its assets to plaintiffs. Mary G. Tice was without right to any consideration from plaintiffs and did not have ownership of that purchased. Defendant Mary G. Tice could not breach the terms of the contract whether it be determined that a binding contract did not exist as to defendant Mary G. Tice because it lacked consideration to her or because it was not mutual or binding on her, *Beatty v. Chicago, B. & Q. R. Co.*, 49 Wyo. 22, 52 P.2d 404 (1935); *Crockett v. Lowther*, Wyo., 549 P.2d 303 (1976); *Shellhart v. Axford*, Wyo., 485 P.2d 1031 (1971), or whether it be determined that the contract was not executory with reference to defendant Mary G. Tice inasmuch as all to be done, or not to be done, by her was already accomplished at the time the contract and addendum were executed. There is nothing in the verified portions of the record to indicate that Mary G. Tice was expected to do more under the contract than required by the addendum.[2]

With reference to the claim that defendant Mary G. Tice committed acts amounting to fraud and deceit, the pertinent record does not reflect a controversy over the facts which are material to the decision that the claim was unfounded as a matter of law.

Plaintiffs' claim of fraud is predicated upon three alleged false representations: (1) the gross income of the business; (2) the amount of real property involved in the sale; and (3) the amount of money in the business checking account.

1. The body of the addendum reads in full:

 "The parties hereto agree that the naming of Mary G. Tice as a 'Seller' herein and her conveyance of certain of the assets of said company are merely for the purpose of assuring Buyers free title, unemcumbered [sic] by any homestead or dower rights or other similar rights by virtue of her marital status. Notwithstanding said designation and language to the contrary herein, Charles T. Tice is the actual owner of said business and its assets and all payments required to be made by the terms of this Agreement shall be made to him only and not to Mary G. Tice."

2. The contract contains the following provision:

 "(e) No representation or warranty in this Agreement by the Sellers nor any written statement or certificate furnished or to be furnished to Buyers by the Sellers pursuant hereto or in connection with the transactions contemplated hereby contains or will contain any untrue statement of a material fact, or omits or will omit to state a material fact necessary to make the statements contained therein not misleading."

 If the addendum does not preclude the application of this clause to defendant Mary G. Tice, the discussion (ante) relative to her position under the fraud claim reflects the inapplicability of this clause to her.

Any representations, true or false, with reference to the gross income or amount of real property, were made only by defendant Charles T. Tice. The record reflects that defendant Mary G. Tice made no specific reference thereto.

Her comments concerning the third alleged false representation, i. e., the business checking account and her activities with reference thereto, do not amount to that necessary for the essential elements of fraud.

As stated in *Johnson v. Soulis*, Wyo., 542 P.2d 867, 872 (1975):

"In Wyoming the elements of an action for fraud have been identified as a false representation by a defendant of material facts which are relied upon by a plaintiff to his damage. *Davis v. Schiess*, Wyo., 417 P.2d 19 (1966). Earlier this Court developed the concept that the asserted false representation must be one which is made to induce action, and that it must be reasonably believed by the plaintiff to be true. *First National Bank v. Swan*, 3 Wyo. 356, 23 P. 743 (1890)."

On the morning the contract was signed and the closing took place, defendant Mary G. Tice advised plaintiff Sally J. Reynolds by telephone that there was no money in the company bank account and that a state-ment for about $3,100 of Phillips Petroleum Company could not be paid. Defendant Mary G. Tice believed this representation to be true, but there was something in the neighborhood of $1,400 in the account. Defendant Charles T. Tice had written a check for $3,000 to defendant Mary G. Tice and one for $500 to himself on the account on the day of closing. At closing, defendant Mary G. Tice paid the Phillips Petroleum Company statement with a check on her personal account.[3]

If the comments and actions of defendant Mary G. Tice would induce any action by plaintiffs, it would seem to induce them not to sign the contract, rather than induce them to do so. She told them there was no money in the bank account when in truth there was some. If she had told them there was $50,000 in the bank, when in fact there was only $5,000, the fraudulent element of "asserting a false representation * * * to induce action" may have been met. In other words, the representation made by defendant Mary G. Tice was not material. It was not made to induce action by plaintiffs.

"One of the elements necessary to establish actionable fraud is that the fact which is represented or concealed have

---

3. The parties have argued at length concerning the amount of money required by the contract to be in the checking account. There seems to be no pertinency to this argument. The contract sets forth the price to be paid by the plaintiffs for its business and assets. It provides that the price "shall be adjusted by adding or subtracting, as appropriate, a figure equal to one hundred percent (100%) of the amount by which the value of the following items exceed or are less than the amounts set forth opposite them on the date stated." Then listed are amounts for inventory, accounts payable, accounts receivable, cash in bank and credit card charges. That listed for cash in bank was $1,000. The date was stated as May 4, 1977 at 8:00 A.M. This is a common provision in contracts for purchase and sale of a going business. Its purpose is to provide a means for carrying on the business until the transaction is finalized without change in consideration on both sides due to fluctuation in assets caused by business activities. Regardless of the amount in the bank account, the agreed payment would be modified according to the deviation of the amount from $1,000, and neither party would suffer a loss. Plaintiffs could not have legally refused to perform under the agreement because of the amounts actually in the checking account.

It is also noted that the contract was executed May 5, 1977, a day after the date set for determining the exact amounts of the listed items. The exact amounts were determinable at the time the contract was executed, and they could have been listed to avoid any controversy. However, all of the contract provisions relative to this aspect of the agreement were copied from the Offer to Purchase, Acceptance and Deposit Receipt which was executed by plaintiffs on February 25, 1977 (the date to which adjustment was to be made was left blank). The practical effect of this was to leave the amount to be in the bank account on a specified date in the entire control of defendants. They could deplete it or add to it as they desired. Therefore, the argument that the provision was to assure working capital for buyers is without foundation.

materiality. [Citations.]" *McCamon v. Darnall Realty*, Wyo., 444 P.2d 623, 625 (1968).

The deposition of plaintiff Montie M. Reynolds reflects that when asked whether or not he considered cancelling the transaction because of the checking account situation, he replied that he did not because "that didn't seem to be significant to cancel the transaction at that time."

The record which was before the court when it granted the motion for summary judgment does not reflect any substantiation of the contention that defendant Mary G. Tice was a partner of defendant Charles T. Tice in the business or that she was involved in a conspiracy to defraud plaintiffs. There is nothing in the record to counter the deposition testimony that defendant Mary G. Tice had no interest or association in the business and that it was owned and operated entirely by defendant Charles T. Tice.

 Nor is there any indication therein that she took part in the negotiations for sale of the business. Although she may have been present at several of the meetings between plaintiffs and defendant Charles T. Tice during the negotiations period, the meetings were characterized as both business and social. When asked for a statement made by Mrs. Tice relative to the inducement to purchase, plaintiff Montie M. Reynolds, in his deposition, could recall nothing more specific than her comment "that it was a good business and that Chuck had mismanaged it." In response to the same inquiry, plaintiff Sally J. Reynolds, in her deposition, answered "I can't honestly say that she did," and "the only thing I can remember Ty agreeing that Chuck was very poor with books" (Ty is defendant Mary G. Tice). In an affidavit filed in resistance to a motion for summary judgment, plaintiff Sally J. Reynolds stated that Mary G. Tice once said the purchase was "a good deal." These general comments are not sufficient to substantiate a fraudulent representation. If anything, they would serve to place plaintiffs on guard as to the condition and value of a business that was "mismanaged" by one who was "poor with the books."

Such general comments are not sufficient as a matter of law to substantiate actionable fraud.

" * * * [F]raud will not be imputed to a party when the facts and circumstances out of which it is supposed to arise are equally consistent with honesty and purity of intention. This is simply another way of stating the proposition that fraud must be demonstrated in a clear and convincing manner. * * * " *Johnson v. Soulis*, supra, 542 P.2d at 874.

Plaintiffs' reference to the fact that defendant Mary G. Tice might share with her employer in the real estate listing commission from the sale of a third party's residence to plaintiffs has no relevance or pertinency to the fraud alleged in this action. It does not have "some legal significance" to the fraud alleged in the sale of the business and its assets by defendant Charles T. Tice to plaintiffs. See *Johnson v. Soulis*, supra.

There was no error in the granting of the motion for summary judgment in favor of defendant Mary G. Tice.

## CASE NO. 5043

Of the several issues presented on appeal in Case No. 5043, we need consider only one inasmuch as we find error in the instructions to the jury relative to damages.

The nature of the evidence and the manner in which it was submitted in this case necessitated careful instructions, both as to the measure of damages and to insure that there would be no duplication of damages. By failing to do either, the possibility, *in this case*, for a double damages verdict and for improper determination of damages is sufficient to warrant reversal.

The trial was held to determine the facts involved in two claims for relief, one grounded in fraud and one grounded in breach of contract.

In this particular case, both claims concern identical incidents—alleged false representations of gross income, of amount of real property, and of money in the checking account. The breach of contract claim is

based upon alleged breach of the contract provision against untrue statements or representations (set forth in full in footnote 2). The fraud claim is based on the same alleged misrepresentations. The elements of the two claims are different. The elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages. *Fowler v. A & A Company*, D.C.App., 262 A.2d 344 (1970); *Realty Developing Co., Inc. v. Wakefield Ready-Mixed Concrete Co.*, 327 Mass. 535, 100 N.E.2d 28 (1951); *Camenisch v. Allen*, 158 Pa.Super. 174, 44 A.2d 309 (1945); Restatement of the Law, Contracts, Vol. 1, § 312 (A.L.I.1932); 17 Am.Jur.2d Contracts, § 441. This is often stated, as the court here instructed, as failure without legal excuse to perform any promise which forms the whole or part of a contract. *Friedman v. Katzner*, 139 Md. 195, 114 A. 884 (1921). As previously set forth, the elements for a fraud claim consist of (as the court here instructed) a false representation by a defendant of material facts which were made to induce action; which are reasonably believed to be true by *defendant; and which were relied upon by* him to his damage. *Johnson v. Soulis*, supra.

■ The measure of damages for breach of contract is that which would place plaintiff in the same position as he would have been had the contract been performed, less proper deductions. In other words, it is that which will compensate him for the loss which full performance would have prevented or breach of it entailed. *Woodburn Brothers v. Erickson*, 10th Cir. 1956, 230 F.2d 240; and *Zitterkopf v. Roussalis*, Wyo., 546 P.2d 436 (1976).

The measure of damages for fraud and deceit is normally measured in one of two ways. It is either the difference between the actual value of the property at the time of making the contract and the value it would have possessed if the representations

had been true, or it is the difference between the actual value of the property at the time of making the contract and the value of the purchase money or other consideration parted with for the property. 37 Am.Jur.2d Fraud and Deceit, §§ 353 and 355. Professor McCormick notes the former to be the majority rule and he characterized it as the "loss of bargain" rule. He noted the latter to be the minority rule and characterized it as the "out-of-pocket loss" rule. McCormick on Damages, § 121, p. 448 (1935). A few states have not settled on either position with reference to the two rules but have used one or the other of the rules according to the facts presented and the proof available in each case. See 37 Am.Jur.2d Fraud and Deceit, § 352.[4] In this case, an instruction was not given under either rule.

Damages resulting from application of the out-of-pocket loss rule would normally be the same as that resulting from the measure of damages for breach of contract. That resulting from application of the loss-of-bargain rule for damages for fraud could be greater or less than that resulting from the measure of damages for breach of contract. Regardless of which rule was used, double damages could result if the jury was not carefully instructed that such would be improper.

The foregoing evidences the potential problems with reference to jury instruction in this case where there are claims for both fraud and for breach of contract.

In addition to the introductory instruction relative to jury function and trial procedure, which was given at the beginning of the trial, the court gave eight instructions. Two were with reference to damages. They were:

### "INSTRUCTION NO. 7

"If you find for the plaintiff [sic] on the issue of fraud then you should award such sums as you believe will fairly and justly compensate them for the damages

---

4. For a sharp discussion on application of "restitutionary" measure of damages to contract related torts, see Hill, "Breach Of Contract As A Tort," 74 Colum.L.Rev., p. 40 (1974).

you believe they sustained as a direct result of the defendants [sic] misrepresentations.

"In determining plaintiff's [sic] damages, you should consider any of the following elements of damage that you find were the result of the misrepresentations:

"1. That the representations with reference to the gross income of Tice's 66 Oil Company were false.

"2. That the representations with reference to the amount of the real estate involved in the sale were false.

"3. That the representations of the amount of money in the business checking account were false."

## "INSTRUCTION NO. 8

"If you find for the plaintiffs on the issue of breach of contract, then you should award such sums as you believe will fairly and justly compensate them for the damages you believe they sustained as a direct result of the breach of contract by the defendant.

"In determining plaintiff's [sic] damages you should consider any of the following elements of damage that you find were the result of such breach:

"1. Representing the gross income of the business of 1976.

"2. Representing the real property acreage involved in the sale.

"3. Not remitting the monies in the business bank account as agreed upon in the contract of sale." [5]

Defendant Charles T. Tice objected to Instruction 8 as not giving the jury a proper standard by which to measure damages. He also objected to the court's refusal to give the following instruction as requested by him:

## "MEASURE OF DAMAGES

"You are instructed that, if you find that fraud was committed in this case, you will proceed to the matter of the assessment of damages to the Plaintiffs. In assessing damages, you are instructed that it is not material in the matter of damages what the amount of the purchase price of the business as set forth in the contract was. If you find that the Defendants or either of them are guilty, the measure of actual damages, if any, sustained by the Plaintiffs in this case, is the difference between the actual value of the property in question, in the condition it was in when sold on or about May 5, 1977, and the value of the same property if it had been, in fact, such property as was stated and represented by Charles T. Tice, Mary G. Tice, or both of them, at the time of the sale."

In Instruction 7, the court directed an award, if the finding was for the plaintiffs "on the issue of fraud." In Instruction 8, the court directed an award if the finding was for the plaintiffs "on the issue of breach of contract." The jury could, and did, find defendant Charles T. Tice liable to plaintiffs on both issues. Under the directions contained in Instructions 7 and 8, it could have awarded damages separately for each finding. Whether or not it did so can be only speculation, but we cannot allow the possibility of an award of double damages. Compensatory damages are just that—to compensate for loss and no more. *Hunt v. Thompson*, 19 Wyo. 523, 120 P. 181 (1912), reh. den. 19 Wyo. 523, 536, 122 P. 624 (1912); and *Douglas Reservoirs Water Users Ass'n v. Cross*, Wyo., 569 P.2d 1280 (1977). Double recovery is not favored. *Western Nat. Bank of Casper v. Harrison*, Wyo., 577 P.2d 635 (1978). Since both claims are founded on the same incidents, compensation for damages under either claim would preclude compensation under the other. Once compensated for loss under the incident, plaintiff cannot be compensated again for the same loss. To do so, would be to award double damages.

" * * * [A] duplication of an element of recovery constitutes prejudicial error.

---

**5.** The three items listed as "elements of damage" on Instructions 7 and 8 are more properly incidents of the claims. Elements of damage are such things as loss of earnings, pain and suffering, etc.

\* \* \* " *LeMieux v. Sanderson*, 180 Neb. 311, 142 N.W.2d 557, 561 (1966). " \* \* \* However, care should be exercised to avoid double recoveries by allowing the same damage twice under different designations. \* \* \* " *Ford Motor Company v. Taylor*, 60 Tenn.App. 271, 446 S.W.2d 521, 530; 25A C.J.S. Damages § 181.

The form of special verdict did not rectify the situation. In fact, it could be taken to call for a summation of the amount of damages allocated for each claim.[6] It could, therefore, indicate to the jury the propriety of an award for double damages.

The dual and overlapping nature of the claims for relief also pertain to the question as to whether or not a measure of damage instruction should have been given to the jury. In this case, a definite reason exists for a measure of damage instruction. The largest proportion of the evidence presented to the jury consisted of testimony to establish the misrepresentations. This was proper testimony and it included extensive reference to bookkeeping and accounting computations and statements, pro forma cash flow sheets, income tax returns and similar matters. Exhibits were introduced and received which consisted of some of these things. In some instances, there were computations included therein which could be used in proper measurement of damages. In other instances, the computations may have been relevant to establish an element of the misrepresentations, but they would not only be irrelevant to establish the amount of damages, but they would be

misleading if used for that purpose. For example, plaintiffs prepared a pro forma statement of cash flow which included an arbitrary 10 percent increase for anticipated increase in business. For another example, the misrepresentation as to the *gross* income of the business concerned a duplication of gross sales alleged to result from sale of products from the bulk plant to the service stations which were duplicated in the records when the sale of the same products was made from the service station to the public. This may have been pertinent to establish the misrepresentation. The jury found that it was. But the figures have no pertinency to the amount of damages. The *net* income of the operation, as reflected on the books was not changed by the duplication in gross income since it was offset by an entry relative to cost of goods sold. Another example of potential misunderstanding as to amount of damages is set forth in footnote 3, supra.

 Although instructions relative to measure of damages are ordinarily of considerable help to a lay jury, such instructions need not be given in those circumstances in which the measure is obvious, simple and easily apparent. *Davis v. Graham*, 31 Wyo. 239, 225 P. 789 (1924). The circumstances of each case must be considered in the determination as to whether or not a measure of damage instruction is necessary. The evidence in this case was sufficiently complicated with reference to the pertinency to damages of the dollar figures used in the evidence as to render

**6.** The verdict was returned as follows:

"1. Did the defendant, Chuck Tice, perpetuate [sic] any fraud in this case? _X_ Yes ___ No

"2. If the answer to Question No. 1 is yes, check in which area the fraud was perpetrated:

"A. Misrepresenting the gross income of Tice's 66 Oil Company. _X_

"B. Misrepresenting the amount of real estate involved in the sale. _X_

"C. Misrepresenting the monies in the business checking account. _X_

"3. Did the defendant, Charles T. Tice, breach the contract in this case? _X_ Yes ___ No

"4. If the answer to Question No. 3 is yes, check in which area the breach occured [sic]:

"A. Misrepresenting the gross income of the business for 1976. _X_

"B. Misrepresenting the real property acreage involved in the sale. _X_

"C. Not remitting the monies in the business bank account as agreed upon in the contract for sale. _X_

"5. If you have answered either or both question No. 1 and question No. 3 yes, state what amount, if any, you believe will fairly and justly compensate the plaintiffs for their damages in this case.

$ _126,000.00_ ."

such instruction necessary so that the jury would have proper understanding of the application of legal principles in arriving at the amount of damages.

"Damages must be measured by a legal standard, one which serves to guide the fact finder in determining what sum will compensate the injured party. * * * " *Mangham v. Hall*, Tex.Civ.App., 564 S.W.2d 465, 468 (1978).

See *Jamison Co., Inc. v. Westvaco Corp.*, 5th Cir. 1976, 526 F.2d 922; and *Levine v. Giant, Inc.*, 197 Pa.Super. 339, 178 A.2d 802 (1962).

"Generally speaking, the court should instruct the jury as to the proper measure of damages in the case and the elements to be considered in fixing them. * * " 22 Am.Jur.2d Damages, § 364, p. 448.

The instructions in this case were inadequate to insure accomplishment of substantial justice. The indicated objections were sufficient to preserve the error for our consideration since they informed the court that a proper "standard by which to measure damages" was not given to the jury. This objection was accompanied by a request that a proffered instruction thereon be given. An objection was made to the refusal to give it. The trial court thus had an opportunity to avoid error. *Haley v. Dreesen*, Wyo., 532 P.2d 399 (1975). Further, the court has an obligation *sua sponte* to avoid giving instructions which are conducive to an award of double damages and to give those instructions which so concern a fundamental issue as to require the same in the interest of substantial justice. *LeMieux v. Sanderson,* supra; *St. Louis-San Francisco Ry. Co. v. Farrell*, Okl., 263 P.2d 518 (1953); *City of Altus v. Martin*, 185 Okl. 446, 94 P.2d 1 (1939). See *Borcherding v. Eklund*, 156 Neb. 196, 55 N.W.2d 643 (1952); *Burns v. Pennsylvania R. Co.*, 233 Pa. 304, 82 A. 246 (1912); *Harrington v. State*, Tex. Civ.App., 385 S.W.2d 411 (1964).

The granting of summary judgment in favor of defendant Mary G. Tice in Case No. 4963 is affirmed. The judgment for plaintiffs in Case No. 5043 is reversed, and Case No. 5043 is remanded for a new trial.

THOMAS, Justice, specially concurring.

I do not disagree with what is said in the opinion of the court in this case, and I do concur in the result. I would resolve the issues in a different manner, however, which would still require a new trial to evaluate damages and the contractual bases for recovery. My position is that the evidence in this case was not sufficient to justify the submission of the fraud issue to the jury. A directed verdict for the defendant on the issue of fraud would, of course, resolve the problem of duplicate recovery to which the opinion of the court speaks.

One who relies upon fraud is charged with alleging with certainty and definiteness the tangible facts to support averments of fraud, and the burden of proof is upon the person charging fraud to prove it by clear and convincing evidence. *Schaffer v. Standard Timber Company*, 79 Wyo. 137, 331 P.2d 611 (1958). The elements of fraud are that the defendant did make false representations of material facts, knowing them to be false, and that the plaintiffs, without knowledge of the falsity, reasonably relied upon them to their detriment. *Davis v. Schiess*, Wyo., 417 P.2d 19 (1966). The general rule is that the law will not afford relief to one who suffers because he did not use ordinary means of information, whether that neglect be attributable to indifference or credulity. *Gladstone Hotel, Inc. v. Smith*, Wyo., 487 P.2d 329 (1971).

In this instance the plaintiffs relied upon three misrepresentations to support their claim of fraud. They claimed that the defendants misrepresented the total sales or the gross income of the business; that the defendants misrepresented the acreage in the real property involved in the sale; and that the defendants misrepresented the amount of money in the business checking account.

As to the latter basis for recovery on the ground of fraud, the contract provided that an adjustment would be made in the purchase price for any deviation in the business bank account either upward or downward from $1,000 as of May 4, 1977. Consequent-

ly a misstatement of the figure in the bank account could not be a material fact in the context of this transaction, and my understanding of the evidence is that there was more than $1,000 in the business bank account as of that date. I therefore cannot fathom any theory that there was detriment to the purchasers. Their complaint is that they were defrauded because there was more money in the bank account as of the time of closing than sellers agreed to have in the account.

With respect to the claimed misstatement of the area of the tract of real property, the plaintiffs alleged that the representation was made that it consisted of a minimum of 1½ acres. The legal description of the tract of real property appears in a warranty deed and in a quitclaim deed attached to the agreement of purchase and sale, and it also appears in Exhibit A attached to that contract. This same information was attached to an Offer to Purchase, Acceptance and Deposit Receipt which the buyers signed on February 25, 1977. In each of those documents it is described as being .42 acres. Having that information in front of them at the time the agreement of purchase and sale was executed, and having had it called to their attention previously, I cannot see how the plaintiffs can claim reasonably to have relied upon the statement of a different area by the defendant. While they may not be charged with a duty to investigate in order to discover facts, they certainly cannot ignore information that was before them at the time the contract was executed. In addition, Mr. Reynolds was asked if he could form an opinion as to the value of the land he actually received, which appears to be .9 of an acre. His response was that it would be worth around $54,000. In the agreement of purchase and sale an allocation of the purchase price of the business is made in paragraph 4 providing:

"(a) The price paid for the real estate shall be $50,000;"

This refutes any claim by the plaintiffs of detriment related to the valuation of the tract of real property.

Finally, turning to the claim of misrepresentation with respect to the gasoline sales, or alternatively the gross income of the business, paragraph 8 of the agreement of purchase and sale which was prepared by counsel for the buyers contains "Representation of Warranty Buyers." The last sentence of paragraph (b) of that clause states:

"The Buyers acknowledge that no representations have been made to them concerning the sales, volume, gross profits or net income of the .business, other than those attached hereto."

While Mr. Reynolds did testify that information concerning those matters was furnished to him, no documents containing such information were attached to the agreement of purchase and sale. Consequently the buyers are foreclosed by their agreement from claiming that they relied upon those figures. Furthermore, it is my understanding from the record that the figures which were furnished to the buyers were based upon the books and records of the sellers which they kept in the normal course of their business operations. While it appears to be agreed by the expert witnesses that the method of accounting used by the sellers did result in a duplication of sales figures since it included sales from the bulk plant to the retail stations for which no payment was made by the retail stations, it also appears that the retail stations were shown as having paid for this gas as a part of their costs. The result was that total gross profit was correctly stated although the sales by the retail stations were duplicated. Gross income misrepresentation alone was *alleged* in the complaint. Given this set of circumstances and a standard of clear and convincing proof, while the buyers testified that the seller knew they were projecting future sales based upon the duplicated sales figures, the evidence is far from clear and convincing in demonstrating that the seller understood and appreciated the significance of that use. The information furnished was that used by the seller as his accounting records for his business, and in terms of profit and loss these documents accurately reflected the situation. The buyers took part of that information and

attached a particular materiality to it for their own purposes. The evidence is not clear and convincing that the seller understood the special materiality attached to the sales to a degree which on that basis alone would permit charging him with making false representations of material facts knowing them to be false.

I therefore would reverse the case and remand it for a new trial with the direction that the evidence was insufficient to sustain the claim of fraud, and that the case must go to the jury only on evidence demonstrating breaches of contract.

ROSE, Justice, concurring in part and dissenting in part.

I concur in the majority's disposition of Case No. 4963, but I am unable to agree with the reversal in Case No. 5043.

The majority premises its reversal of Case No. 5043 on a finding that there is a possibility—given the instructions to the jury—the jury awarded double damages to the plaintiffs. It reaches this conclusion because the measure of damages for breach of contract and the measure of damages for fraud can, under certain circumstances, be the same. Coupling this statement—with which I have no basic disagreement—with the fact that the jury was not appropriately instructed as to the measure of damages to be specifically utilized in this case, the majority assumes there could have been a double assessment of damages.

First, it is important to note that the defendant made no claim in this appeal that the damages award amounted to a double recovery. This theory for reversal is a product of the majority's own analysis of the record and the law. The defendant simply argued that there should have been a more specific measure-of-damages instruction, and that the absence thereof led to an excessive verdict.

Second, even if I assume that the majority's double-recovery theory falls somehow within the defendant's statement of the issue before us, I am still of the belief that the majority fails to go far enough in its analysis of the theory and its applicability to this case.

Assuming, arguendo, that the damage instructions were confusing and that it was "possible" that there could have been a double-damages award, this court—before reversing for a new trial—must determine whether a double award has likely been made. In doing so, the court must consider all the evidence and the verdict. 25A C.J.S. Damages § 181 at p. 204. In this case, the majority fails to consider that the only evidence of damages in the record supports a verdict in the range of $126,000.00—the amount ultimately awarded by the jury. Indeed, the defendant never pointed to anything in the record that would justify a different verdict—he simply stated in his brief that he could not "fathom" the verdict.

I would not consider the defendant's bald assertions sufficient to rise above that of harmless error. When instructions recognize two different measures of damages when only one is appropriate, *and* they plainly tend to mislead the jury, *and it cannot be determined from the record that the erroneous instructions were harmless,* then, and only then, is a new trial in order. See, *Hull v. Geary,* 71 W.Va. 490, 76 S.E. 960 (1912). It was the defendant's burden to show prejudicial error. *Webber v. Farmer,* Wyo., 410 P.2d 807, 811 (1966). See, Rule 7.04, W.R.A.P. He has failed, in my opinion, to sustain this burden. A party seeking reversal due to instructional error must establish that the error was prejudicial—prejudice is never presumed. *Booth v. Hackney,* Wyo., 516 P.2d 180, 183 (1973). By failing to consider the evidentiary support for the verdict that was rendered, the majority necessarily presumed the presence of prejudice. I can find no such prejudice, presumed or otherwise.

Had I been writing the majority opinion, I would have affirmed the judgment rendered in Case No. 5043.