WYOMING SUGAR GROWERS, LCC,
f.k.a. Wyoming Sugar Company,
LLC, Plaintiff,

v.

SPRECKELS SUGAR COMPANY, INC.,
f.k.a. Holly Sugar Corporation, and
John and Jane Does I–X, Defendants.

Case No. 12–CV–143–J.

United States District Court,
D. Wyoming.

Dec. 3, 2012.

Ashton Hyde, Scott M. Petersen, Fabian & Clendenin, Salt Lake City, UT, Michael D. Greear, Worrall & Greear, Worland, WY, for Plaintiff.

Erin Davenport, Theresa M. Bevilacqua, Dorsey & Whitney LLP, Minneapolis, MN, William B. Prince, Dorsey & Whitney, Salt Lake City, UT, for Defendants.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

ALAN B. JOHNSON, District Judge.

Plaintiff Wyoming Sugar Growers, LLC bought substantially all of Defendant Spreckels Sugar Company, Inc.'s assets related to a sugar refining facility near Worland, Wyoming. During the negotiations leading up to the sale, Defendant represented to Plaintiff that it did not own and therefore could not sell severed mineral rights that it had previously owned in the Worland area. After the sale, Plaintiff discovered that Defendant did own severed mineral rights in the area and brought suit seeking damages for Defendant's fraudulent and negligent misrepresentations. Plaintiff also seeks reformation of its contract with Defendant based on mutual mistake and an order quieting title to Defendant's severed mineral rights in Plaintiff. Defendant has now filed a motion to dismiss Plaintiff's claims and the Court grants Defendant's motion.[1]

### STANDARD OF REVIEW

The standard of review for a Rule 12(b)(6) motion to dismiss applies here. In *Ashcroft v. Iqbal,* the Supreme Court articulated a two-step approach for district courts to use when considering a motion to dismiss. *See* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal* clarified that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id.* at 678, 129 S.Ct. 1937, and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether

---

1. After examining the briefs and the record, the Court has determined that oral argument would not be helpful in resolving this matter. *See* U.S.D.C.L.R. 7.1(a). The Court therefore **DENIES** Plaintiff's motion requesting oral argument (ECF No. 23).

they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937. The Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678, 129 S.Ct. 1937. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully but the complaint doesn't need to establish that the defendant probably acted unlawfully. *See id.* "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937; *see Gee v. Pacheco,* 627 F.3d 1178, 1185 (10th Cir.2010) ("*Iqbal* establishes the importance of context to a plausibility determination.").

## FACTS

Plaintiff Wyoming Sugar Growers, LLC is a limited liability company organized under Wyoming law. First Am. Compl. ¶ 1, ECF No. 12. Defendant Spreckels Sugar Company, Inc. is a corporation organized under New York law with its principal place of business in Minnesota and with operations in Wyoming. *Id.* ¶ 2.

Many years ago, Defendant acquired a plant and surrounding lands used to produce and refine sugar from sugar beets known as the Worland Facility near Worland, Wyoming. *Id.* ¶ 6. Defendant leased some of its tracts to growers who produced the sugar beets and it used other tracts for storage facilities, to serve as a buffer around the facility, and for other business-related purposes. *Id.* ¶ 10. Occasionally, Defendant would sell tracts of land to the growers who had been leasing the land, but Defendant would always sever and reserve to itself the mineral rights associated with the tracts it sold. *Id.* ¶ 11.

More recently, Plaintiff began negotiating with Defendant in hopes of purchasing the Worland Facility, and the parties agreed that Defendant would sell everything it owned in the Worland area to Plaintiff except whatever Defendant expressly excluded from the deal. *See id.* ¶ 17. As negotiations progressed, Defendant reaffirmed that it was giving Plaintiff "everything," including all the mineral rights it had relating to the properties, except for the severed mineral rights tied to the former agricultural properties because Defendant represented that it had previously sold those rights. *Id.* ¶ 34.

Based on Defendant's representations, Plaintiff believed that Defendant had no mineral rights related to the Worland Facility other than those on which the plant stood, the surrounding buffer property, and the few properties used for storage. *Id.* ¶ 35. Defendant repeatedly stated that all of Defendant's other mineral rights had been previously sold or transferred. Responding to Plaintiff's due diligence requests regarding what assets would be included in the deal, Defendant never provided a listing of any mineral rights. *Id.* ¶ 39. This reinforced Plaintiff's understanding that Defendant's severed mineral rights would not be included in the transaction because they had been previously sold by Defendant. *Id.* ¶ 37.

Defendant eventually sold substantially all of its assets related to the Worland Facility to Plaintiff via an Acquisition Agreement and a Contribution Agreement. *See id.* ¶¶ 42–50. Neither agreement included Defendant's severed mineral rights. *See id.* Ex. B, ECF No. 12–1; *id.* Ex. C, ECF Nos. 12–2, 12–3. The Contribution Agreement did, however, include a dis-

claimer provision stating that Plaintiff was not relying on any of Defendant's prior representations when entering into the contract. *See id.* Ex. C § 5.1, ECF No. 12–2.

Last year, Plaintiff received inquiries regarding the lease of mineral rights previously severed and reserved by Defendant on various parcels of land in the Worland area. *Id.* ¶ 52. Plaintiff then contacted Defendant to confirm that Defendant had sold its severed mineral rights to Plaintiff during the sale of the Worland Facility, *id.* ¶ 56, but Defendant asserted that it had not sold its severed mineral rights as part of the sale and that the severed mineral rights remained Defendant's property, *id.* ¶ 57.

Plaintiff then brought suit against Defendant, claiming that Defendant had fraudulently and negligently misrepresented to Plaintiff that it did not own and therefore could not sell its severed mineral rights to Plaintiff during their negotiations. *Id.* ¶¶ 58–71, 78–92. In the alternative, Plaintiff claims that the failure to include Defendant's severed mineral rights in the sale resulted from a mutual mistake. *Id.* ¶ 72–77. Plaintiff asserts that it was damaged because it failed to secure ownership of the severed mineral rights and their value and has suffered the loss of any rents, royalties, or other profits or proceeds generated by the severed mineral rights from the date of the sale to present. *Id.* ¶¶ 69–70. Plaintiff asks for damages on its fraud and negligent misrepresentation claims and wants an order quieting title to Defendant's severed mineral rights

in Plaintiff as part of its mutual mistake claim. *Id.* ¶¶ A–G.

Defendant has now filed a motion to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to establish any of the elements of mutual mistake, that Plaintiff's negligent misrepresentation and fraud claims also fail, and that Plaintiff has failed to plead its fraud claim with the specificity required by Federal Rule of Civil Procedure 9(b). *See* Def.'s Mem. 2–3, ECF No. 20. Plaintiff opposes Defendant's motion by arguing that it has alleged sufficient facts and adequately pleaded each of its claims. *See* Pl.'s Resp. 2, ECF No. 21.

## DISCUSSION

### I. Negligent Misrepresentation

The Court dismisses Plaintiff's negligent misrepresentation claim for two reasons.[2] First, Wyoming Supreme Court precedent forecloses Plaintiff's negligent misrepresentation claim. Second, Plaintiff has not suffered any damages.

■ The Wyoming Supreme Court has held that "where the contract includes a disclaimer provision, stating that the buyer is not relying upon any representation of seller or seller's agents, the buyer may not assert a claim for negligent misrepresentation." *Sundown, Inc. v. Pearson Real Estate Co.,* 8 P.3d 324, 332 (Wyo.2000) (citing *Snyder v. Lovercheck,* 992 P.2d 1079, 1089 (Wyo.1999)). In *Sundown,* the court concluded that a ranch purchaser could not maintain a negligent misrepresentation

---

**2.** Under Wyoming law, the elements of negligent misrepresentation are as follows: (1) defendant gave plaintiff false information in a transaction in which defendant had a pecuniary interest; (2) defendant gave the false information to plaintiff for the guidance of plaintiff in plaintiff's business transactions; (3) defendant failed to use reasonable care in obtaining or communicating the information; (4) plaintiff justifiably relied on the false information supplied by defendant; and (5) as a result of plaintiff's reliance, plaintiff suffered economic damages. *See Birt v. Wells Fargo Home Mortg., Inc.,* 75 P.3d 640, 656 (Wyo. 2003).

claim against the seller's real estate broker because the contract included a disclaimer that the purchaser was not relying upon any representation of the seller or seller's agents. *See id.* at 332. Similarly, in *Snyder*, the court concluded that a buyer of a wheat farm was barred from asserting a claim for negligent misrepresentation because the contract between the buyer and sellers clearly and unambiguously stated that the buyer was not relying on any representations made by the sellers. *See Snyder*, 992 P.2d at 1089.

Here, Plaintiff challenges the Contribution Agreement, *see* Pl.'s Resp. 12, ECF No. 21, which contained a disclaimer provision stating that Plaintiff was not relying on any representations of Defendant when entering into the contract. *See* First Am. Compl. Ex. C § 5.1, ECF No. 12–2. Thus, like in *Sundown* and *Snyder*, where disclaimer provisions precluded the buyers' negligent misrepresentation claims, the Contribution Agreement's disclaimer provision similarly precludes Plaintiff's negligent misrepresentation claim here.

The Court finds Plaintiffs attempt to distinguish *Snyder* unpersuasive. Plaintiffs distinguish *Snyder* by noting that, "[i]n *Snyder*, the alleged misrepresentations related to the condition of the very property that was the subject of the purchase agreement," Pl.'s Resp. 18, ECF No. 21, but here "the misrepresentations alleged by [Plaintiff] relate to the existence of real property which was (whether by negligence, fraud, or mistake) *not* included or discussed in the contract documents," *id.* at 19 (emphasis in original). Plaintiff's distinction misses the point of *Snyder*, which teaches that a disclaimer provision shifts the risk of relying on a prior misrepresentation to the buyer. *See Snyder*, 992 P.2d at 1089 ("This clause validly allocates the risk of loss resulting from Snyder's reliance on the Lovercheck's representations."). Plaintiff's negligent misrepresen-

tation claim fails because, by signing the disclaimer provision, Plaintiff agreed that it would bear any losses resulting from its reliance on Defendant's prior misrepresentations. Whether the misrepresentation goes to the condition of the property purchased or what property is included in the contract is irrelevant.

■ But even if Wyoming Supreme Court precedent doesn't foreclose Plaintiff's negligent misrepresentation claim, the Court has a second reason for dismissing it: Plaintiff has not suffered any damages. Plaintiff asserts that it suffered damages "in that it failed to secure ownership of the severed mineral rights and their value," and it "suffered the loss of any rents, royalties or other profits or proceeds generated by the severed mineral rights from the date of the sale to present." First Am. Compl. ¶¶ 69–70, ECF No. 12. The fatal flaw in Plaintiff's argument is that Plaintiff never paid for the severed mineral rights. They were not a part of the contract. *See* PL's Resp. 19, ECF No. 21 ("[T]he point of [Plaintiff's] suit (and the reason it has not alleged a breach of contract claim) is that due to [Defendant's] actions, or the mutual mistake of the parties, *the transaction documents do not address the mineral rights*") (emphasis added). And Plaintiff admits that it entered into the contract with the understanding that "there were no mineral rights (other than those tied to the properties on which the factory sat, the surrounding buffer properties, and the storage properties) to be included in the transaction because they had been previously sold by [Defendant]." First Am. Compl. ¶ 37, ECF No. 12.

Quieting title to Defendant's severed mineral rights in Plaintiff—rights that Plaintiff never bought—would not repair any damage to Plaintiff; it would grant Plaintiff a windfall. Plaintiff essentially asks this Court to endorse the following

proposition: If a seller fraudulently or negligently misrepresents to a buyer that the seller no longer owns and therefore cannot sell property to the buyer, then, even if the buyer never pays for the property, a court can force the seller to transfer the property to the buyer for nothing. The Court cannot and will not accept such a proposition because it's grounded neither in law, equity, or, frankly, common sense. Plaintiff has not suffered damages here; it has asked this Court to give it "something for nothing." Def.'s Mem. 1, ECF No. 20. The Court therefore dismisses Plaintiff's negligent misrepresentation claim.

## II. Mutual Mistake

Under Wyoming law, "[a] contract may be canceled or reformed by reason of a mutual mistake." *Patel v. Harless*, 926 P.2d 963, 966 (Wyo.1996). "A mutual mistake is one which is reciprocal and common to both parties with each party being under the same misconception as to the terms of the written instrument." *Id.* A party seeking to cancel or reform a contract on the ground of mutual mistake must prove the following elements: (1) There was an antecedent agreement which the written instrument undertakes to evidence, (2) a mistake occurred in the drafting of the instrument and not in the antecedent agreement which it undertakes to evidence, and (3) in the absence of fraud or inequitable conduct on the part of one of the parties, the mistake was mutual. *Hansen v. Little Bear Inn Co.*, 9 P.3d 960, 964 (Wyo.2000). The party claiming mutual mistake must establish its elements by "evidence that is clear, satisfactory and convincing." *Patel*, 926 P.2d at 966.

Invoking mutual mistake, Plaintiff wants this Court to reform the contract by quieting title to Defendant's severed min-

eral rights in Plaintiff. First Am. Compl. ¶ C, ECF No. 12. Plaintiff claims that reformation is appropriate here because the contract mistakenly failed to include Defendant's severed mineral rights. *See id.* ¶ 76. Plaintiff also claims that the failure to include the mineral rights in the contract was a mistake because Plaintiff and Defendant had an antecedent agreement that Defendant would sell its severed mineral rights to Plaintiff. *See id.* ¶ 74.

The Court dismisses Plaintiff's mutual mistake claim because the complaint fails on the first element of mutual mistake. The complaint itself establishes that Defendant and Plaintiff never agreed that Defendant would sell its severed mineral rights. Plaintiff never agreed to buy Defendant's severed mineral rights because Plaintiff entered the contract with the understanding that "all the severed mineral rights tied to the former agricultural properties had been previously sold." *Id.* ¶ 34. Defendant never agreed to sell its severed mineral rights because it consistently represented to Plaintiff that "all other mineral rights had similarly been previously sold or transferred." *Id.* ¶ 36. The failure to include Defendant's severed mineral rights in the contract was not a mistake. Rather, it was an accurate reflection of the parties' understanding that Defendant was not selling and Plaintiff was not buying Defendant's severed mineral rights. Because Plaintiff's own complaint demonstrates that Defendant and Plaintiff never had an antecedent agreement that Defendant would sell its severed mineral rights, the Court dismisses Plaintiff's mutual mistake claim.

## III. Fraud

The Court dismisses Plaintiff's fraud claim [3] because Plaintiff has not suf-

---

**3.** Under Wyoming law, the elements of fraud are (1) the defendant made a false representation intended to induce action by the plaintiff,

(2) the plaintiff reasonably believed the representation to be true, and (3) the plaintiff relied on the false representation and suffered

fered any damages in this matter, as explained in Part I's discussion of Plaintiffs negligent misrepresentation claim, and because Defendant's representations were not intended to induce Plaintiff to enter into the contract. The Wyoming Supreme Court's decision in *Reynolds v. Tice*, 595 P.2d 1318 (Wyo.1979), is instructive on this latter point.

In *Reynolds*, sellers sold their oil and gas business to buyers, *id.* at 1319, and the buyers claimed that one of the sellers had fraudulently represented that the business's bank account was empty when in fact it had about $1400 in it, *see id.* at 1321. The court concluded that the seller's statement was not made to induce the buyers to enter the contract because "[i]f the comments and actions of [the seller] would induce any action by plaintiffs, it would seem to induce them not to sign the contract, rather than induce them to do so." *Id.*

Like *Reynolds*, where the seller represented that the business lacked an asset that in fact it had, here Defendant represented that it lacked severed mineral rights when in fact it had those assets. And, like the court in *Reynolds*, this Court fails to see how Defendant's representation could have induced Plaintiff to enter into the contract. If anything, Defendant's representation made the contract less, not more, appealing to Plaintiff. Therefore, the Court dismisses Plaintiff's fraud claim for the additional reason that Defendant's representation was not made to induce Plaintiff to enter into the contract.

## CONCLUSION

The Court dismisses Plaintiff's negligent misrepresentation claim because it is precluded by Wyoming Supreme Court precedent and Plaintiff cannot prove damages. The Court dismisses Plaintiff's mutual mistake claim because Plaintiff's own com-

plaint establishes that the parties never had an antecedent agreement that Defendant would sell its severed mineral rights to Plaintiff. The Court dismisses Plaintiff's fraud claim because Defendant's representations did not induce Plaintiff to enter into the contract and Plaintiff cannot prove damages. The Court therefore **GRANTS** Defendant's motion to dismiss (ECF No. 19) and **DISMISSES** Plaintiff's claims **WITH PREJUDICE.**

damages. *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 656 (Wyo.2003).