Roy C. SIMPSON, Appellant,

v.

WESTERN NATIONAL BANK OF
CASPER, Appellee.

No. 4034.

Supreme Court of Wyoming.

May 31, 1972.

4.   4 A.L.I. Restatement, Torts, § 905, pp. 547–548 (1939).

Harry E. Leimback, of Leimback, Aspinwall & Hofer, Casper, for appellant.

Mayne W. Miller, Casper, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

McINTYRE, Chief Justice.

Western National Bank of Casper sued Roy C. Simpson on a $4,000 check which Simpson had issued. The check was drawn on the First National Bank of Casper. It was payable to and deposited in the account of D & W Masonry, Inc., a firm name used by Gary Wyant, a customer of Western National. Before the check had been paid by First National, Simpson stopped payment thereon. In the meantime Western National had honored checks signed by Wyant against the deposit to the extent of $3,992.55.

Simpson defended against the action of Western National on the ground, among others, that plaintiff was not a holder in due course and did not receive the check for deposit in good faith. In that regard defendant asserted that he was wrongfully induced to make the deposit; that after request for financial information about Gary Wyant, plaintiff deliberately misinformed defendant and purposely withheld vital information concerning the financial condition of Wyant, thereby causing defendant to make the deposit; and that the bank was a direct beneficiary of the deposit because it applied some of the funds to the payment of obligations which enhanced the bank's position.

The case was submitted to the jury with instructions on the issues and a verdict was returned in favor of Simpson and against the bank. The trial court subsequently set aside the verdict and gave judgment to plaintiff, notwithstanding the verdict, for $3,992.55. Simpson has appealed.

Counsel for the appellee pinpoints the question we must first deal with in the appeal. He says it is the position of the bank, and of the trial court, that Simpson failed to establish a prima facie case of fraud, and therefore the jury could not have concluded the bank was guilty of fraud.

Although the defendant did not use the term "fraud" in his answer, he did allege facts, in an affirmative defense, which would show fraud as a conclusion of law.[1] Also, the record discloses clearly

---

1. The term "fraud" need not be used in the pleadings if facts are averred which show fraud as a conclusion of law. McInnis and Co. v. Western Tractor & Equipment Co., 63 Wash.2d 652, 388 P.2d 562, 565; Lone Star Gas Company v. Oakman, Okl., 283 P.2d 810, 813; Ryan v. Welte, 87 Cal.App.2d 897, 198 P.2d 357, 359–360; Parish v. Maryland & Virginia Milk Producers Ass'n, 250 Md. 24, 241 A.2d 512, 539; Moon v. Moon, 199 Ga. 808, 35 S.E.2d 439, 440. See also Gogerty v. Coachella Valley Junior College District, 57 Cal.2d 727, 21 Cal.Rptr. 806, 371 P.2d 582, 584; Weston v. Acme Tool, Incorporated, Okl., 441 P.2d 959, 962–963; and 37 C.J.S. Fraud § 80, p. 374.

that the parties themselves and the trial court, throughout the trial, considered and treated defendant's affirmative defense as a defense of fraud.[2] Nothing different is claimed on appeal.

Thus, if substantial evidence of fraud was presented to the jury, and if the jury had reason to believe such fraud caused the defendant to part with the check payable to Wyant's firm, then the jury's verdict ought to be reinstated. On the other hand, if there was no substantial evidence of fraud by Western National which caused Simpson to part with his check, then the judgment notwithstanding the verdict ought to be affirmed.

This court, in an opinion authored by Justice Parker, spoke clearly with respect to the principles involved in such a fraud case as is now before us, in Twing v. Schott, 80 Wyo. 100, 338 P.2d 839. Before reviewing these principles, we want to point out that the fact finder found against the claim of fraud in Twing, while the fact finder found in favor of the claim of fraud in the instant case.

Thus, Justice Parker, in Twing, assumed the evidence in favor of the successful party was true.[3] We must assume, in the present case, that the evidence in favor of Simpson is true. Also, Justice Parker recognized, in Twing, that this court is always reluctant to reverse a judgment unless it is clearly against the weight of the evidence.[4] And yet, the judgment of the trial court was reversed because it was found to be contrary to the uncontradicted and unimpeached evidence. Of course the trial court, in the instant case, should not have set aside the verdict of the jury unless there was a complete absence of substantial evidence of fraud.

Ample authorities were cited in the Twing opinion for acceptance of the following rules pertaining to fraud, all of which we deem pertinent to our decision at this time:[5]

"'It is certainly true that any active conduct or words which tend to produce an erroneous impression may amount to fraud, and half the truth may be a lie in effect.'"

"Even when a party is under no duty to speak regarding a matter, if he does speak, he must speak the truth and make a full and fair disclosure."

"'A statement of opinion in a business transaction upon facts not disclosed or otherwise known to the recipient may reasonably be interpreted as an implied statement that the maker knows of no fact incompatible with his opinion.'"

"'If in addition to the party's silence there is any statement, even any word or act on his part, which tends affirmatively to a suppression of the truth, to a covering up or disguising the truth, or to a withdrawal or distraction of the other party's attention or observation from the real facts, then the line is overstepped, and the concealment becomes fraudulent.'"

Uncontradicted facts in this case are that Roy C. Simpson is a general contractor in Casper. By virtue of being the low bidder, he received a contract for construction of a brick school building at Manor Heights in Casper. Gary Wyant was a brick mason, and Simpson subcontracted to him the masonry work at a price of $35,750. Part of Wyant's work had been done and Simpson had paid him approximately half of the contract price.

From this point on we accept as true the evidence most favorable to Simpson. Ac-

2. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects "as if they had been raised in the pleadings." Rule 15(b) W.R.C.P.; Strahan v. Strahan, Wyo., 400 P.2d 542, 544–545.

3. See 338 P.2d 840.

4. See 338 P.2d 844.

5. See 338 P.2d 843–844.

cording to that evidence, Wyant asked Simpson for another advance of $4,000. Simpson had some reservations about the advance because he was not sure of Wyant's financial condition. The next day Simpson went to the Western National Bank, where Wyant did business. Instead of making a deposit with a teller, he asked for John O'Neill who had been president of the bank. He was told O'Neill was leaving the bank and Robert Miller was the acting president.

Mr. Miller was sitting at a desk talking to Clarence Hamilton, a bank customer. Hamilton called Simpson to the desk and introduced him to Miller, offering to delay his own business which was expected to take some time. Thus, the business between Simpson and the acting bank president was done in the presence of Hamilton, a disinterested party.

According to Simpson, as corroborated at trial by Hamilton, Simpson informed Miller he had $4,000 for Gary Wyant but he was worried about his financial condition and did not want to pay for his labor and materials twice; that he was not going to deliver the money to the bank or Wyant unless he was assured Wyant was in no financial difficulty.

There is testimony indicating Miller informed Simpson that Wyant's financial position was going to be all right; that there was to be a meeting that evening and everything was going to be straightened out; and that there was nothing to worry about. Simpson then said he would leave a $4,000 check for deposit if it was going to pay for material and labor on the Manor Heights job. Before the check was released to Miller, Miller assured Simpson the materials for the Manor Heights job would be paid from the check.

Upon the strength of the representations and promises of Miller, Simpson claims he left the check made payable to Wyant's firm. Apparently the bank endorsed the check for deposit and placed it in the Wyant firm checking account. There was ample evidence from which the jury could believe the bank immediately began charging against the account checks not related to the Manor Heights construction, which it had been holding, and a check for $2,000 for the purchase of property mortgaged to Western National Bank.

■ We find ample evidence in the record from which the jury could believe, if it chose to do so, that when Miller assured Simpson there was nothing to worry about; that everything was going to be all right; and that it was safe for Simpson to make the $4,000 deposit to cover labor and materials on his job, Miller knew or had reason to believe the statements were false and designed to mislead. Indeed, there is substantial evidence tending to prove that at that time the bank had knowledge of the following facts, which were not disclosed to Simpson:

The transaction between Simpson and Miller was on December 19, 1968. During the months of November and December, 1968, the Wyoming Block Company, Wyant's biggest supplier, was not being paid and at one point Wyant was some $37,000 delinquent on that account. Mr. Darrill Brown of the Wyoming Block Company had appeared at the bank on several occasions and advised the bank to this effect. On each occasion, the bank had advised him Wyant was obtaining a SBA loan and he would be all right.

Wyant was heavily indebted to the bank and it had been consistently honoring overdrafts in his checking account. Those overdrafts amounted to several thousand dollars. The bank actually knew at the time of inquiry that Wyant was insolvent.

The bank had, on one previous occasion, informed Simpson that Wyant was to receive a SBA loan. At the time of deposit it knew the SBA loan had been denied, but that knowledge was not imparted to Simpson.

The bank, at the time of inquiry, had taken affirmative action to disallow further overdrafts because of Wyant's fi-

nancial condition; and it had determined no further loans would be made to Wyant. It was in fact taking active steps to cause Wyant's account to become current.

At the time of the requested information, the bank was alarmed at the condition of Wyant's account. It had been closely watching the account for a considerable period of time.

The bank, knowing it had a mortgage on the property involved and that Miller (according to the evidence) had promised to see that the $4,000 would go for labor and materials, nevertheless allowed $2,000 to be paid out on a check given by Wyant to purchase such property.

We have already indicated the rules of law for such a case as this were fully reviewed in Twing v. Schott, 80 Wyo. 100, 338 P.2d 839, 843-844. Nothing remains except for us to point out very briefly how those rules apply quite precisely to this case.

There can be no doubt that Miller's words and assurances to Simpson tended to give Simpson the erroneous impression that Wyant's financial condition was not one of insolvency and that Simpson could safely make a deposit which would go for payment of labor and materials on his job. The half truths and the knowledge about Wyant's condition which Miller did not disclose was in effect an untruth.

Even if we assume Miller did not have to disclose information about his customer Wyant, nevertheless when he did speak, he was obligated to speak the truth and make a full and fair disclosure. The jury had ample reason to believe he did not do this.

Even if we construe some of Miller's statements as opinions such as Wyant was going to be all right and there was nothing to worry about, there were facts known to Miller and not disclosed or otherwise known to Simpson. Therefore, there was an implied statement and representation by Miller that he knew of no fact incompatible with his opinion.

Simpson, as we pointed out previously, did not merely go to a teller and make a deposit for Wyant. He went to the acting president and explained that he did not want to make the deposit unless he could be assured it was all right to do so. Therefore, according to the last rule we previously quoted, any word or act on the part of Miller which tended affirmatively to a suppression of the truth, to a covering up or disguising the truth amounted to an overstepping of the line and the concealment became fraudulent. Here again, there was ample evidence for the jury to believe Miller had concealed some of the truth known by him.

It is clear from what we have said that there was substantial evidence of fraud on the part of Western National and the verdict of the jury should not have been set aside. The judgment entered must be and it is hereby reversed.

Case remanded with instructions to reinstate the verdict of the jury and enter judgment in accordance therewith.