Arch B. BLANTON and Bertha F. Blanton, Appellants (Defendants),

Ralph Hall; Casper Concrete Company (Defendants),

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, and receiver for the Western National Bank, Appellee (Plaintiff).

No. 84–263.

Supreme Court of Wyoming.

Oct. 2, 1985.

Ronald A. Kastanek, Casper, for appellant.

Barry G. Williams and Richard Williams of Williams, Porter, Day & Neville, P.C., Casper, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

This case involves a complex series of transactions among three main parties: appellants Arch and Bertha Blanton (hereinafter appellants), Ralph Hall (hereinafter Hall), and the Western National Bank (hereinafter the bank). The action began when the bank sought foreclosure of a mortgage it held on certain real property which appellants sold to Hall. Appellants held a second mortgage on the same property and filed a counterclaim alleging misrepresentation by the bank and seeking priority for their mortgage over that of the bank's mortgage. The trial court granted, inter alia, summary judgment on the bank's foreclosure action against Hall and dismissed appellants' counterclaim. This appeal ensued. It should be noted that subsequent to the commencement of the action, the bank went into receivership and is represented on appeal by the Federal Deposit Insurance Corporation.

Hall did not appeal the decision of the trial court. Appellants raise the following issues:

"A.

"Did the trial court err in denying appellants' motion to amend their counterclaim?

"B.

"Did the trial court err in granting appellee's motion to dismiss the counterclaim of appellants either in its original form or as set forth in appellants' motion to amend counterclaim?

"C.

"Did the court err in determining that appellee was entitled to foreclose its real estate mortgages as referenced in the judgment being appealed subject to the priorities set forth in the findings in said judgment?

"D.

"Did the court err in determining the priority of the real estate mortgages held by appellee and appellants as set forth in the findings of the judgment being appealed?"

Inasmuch as we find error in the trial court's dismissal of appellants' counterclaim as well as the trial court's denial of appellants' motion to amend their counterclaim, we will reverse and remand. Therefore, we need not address appellants' third and fourth issues regarding the court's determination that the bank was entitled to foreclose its mortgage subject to the priorities of the mortgages set forth in the judgment, as well as the determination of the priorities.

The facts reveal that on June 27, 1980, appellants and Hall met with a representative of the bank regarding the sale of a salvage yard business from appellants to Hall. Appellants and Hall had reached an agreement whereby Hall agreed to assume and pay off a preexisting mortgage incurred by appellants on the real property upon which the salvage yard was located. Additionally, Hall would execute a $125,000 promissory note, secured by a mortgage, in favor of appellants. According to appellants, however, in order for Hall to obtain financing from the bank, the bank required a first mortgage on the real property to secure its loan to Hall. Appellants then agreed to allow the bank to record a first mortgage on the property if there would be a one-time loan to Hall of an amount less than $200,000, that the loan would be used to pay off the preexisting mortgage in-

curred by appellants, and that the remainder of the loan would be used for the purchase of inventory to operate the salvage yard business.

The bank then loaned Hall $175,000 on June 27, 1980. Hall executed a mortgage in favor of the bank and the mortgage was recorded on July 3, 1980. The loan was used to pay off the preexisting mortgage and a portion of the loan was used for operating capital, but a portion of the loan was also used to pay off preexisting notes owed by Hall to the bank. Then, on or about September 17, 1981, the bank again loaned Hall the principal sum of $83,570.64 and another mortgage was executed by Hall to secure the loan; on April 19, 1983, the bank made an additional unsecured loan to Hall in the principal sum of $58,000. Herein lies the problem: Appellants claim the bank was guilty of misrepresentation when it made two subsequent loans to Hall after agreeing to make only one loan of less than $200,000.

Hall subsequently defaulted on all three loans. The bank filed suit to foreclose its two mortgages and to determine the priority of other encumbrances, including the mortgage held by appellants. The bank also filed suit on the unsecured note. Specifically, the complaint filed by the bank sought the following:

Count I: To foreclose the mortgage secured by the June 27, 1980, loan to Hall in the amount of $175,000.

Court II: To foreclose the mortgage secured by the September 17, 1981, loan to Hall in the amount of $83,570.64.

Count III: To obtain judgment on the April 19, 1983, unsecured loan to Hall in the amount of $58,000.

Count IV: To have the mortgage held by appellants in the amount of $125,000 adjudged inferior to that of the bank's.

Count V: To have a certain materialmen's lien on the property held by Casper Concrete Company adjudged inferior to any rights of the bank to the property.

Casper Concrete admitted in its answer that the mortgage of the bank was superior to its materialmen's lien and participated no further in the action.

Both appellants and Hall filed answers and counterclaims to the bank's complaint. Both parties then filed motions to amend their counterclaims. The bank moved to dismiss the counterclaims for failure to state a cause of action and for summary judgment as against Hall. The bank's motions were granted by the trial court in its decision letter:

"The above matter has come before the Court upon a Motion for Summary Judgment and a Motion to Dismiss the Counterclaims. The Court finds that there is no genuine dispute as to any material fact, that the plaintiff [bank] is entitled to judgment as a matter of law, and that the counterclaims do not state a cause of action. Therefore, the motions of plaintiff are granted."

Appellants' first two issues will be considered together: Whether the trial court erred in denying appellants' motion to amend their counterclaim, and whether the trial court erred in granting the bank's motion to dismiss appellants' counterclaim either in its original form or as presented in appellants' motion to amend their counterclaim.

Appellants' first counterclaim is nearly 20 pages in length and alleges, among other things, that the bank breached its agreement with appellants by loaning Hall more than the one-time-only loan they agreed to. Furthermore, the counterclaim alleges that had appellants known the bank was going to make more loans to Hall than the one agreed upon, they would never have agreed to place their mortgage second in priority to the bank's. The counterclaim also alleges the bank wrongfully took possession of and sold certain machinery, tools and equipment belonging to the salvage yard business and that the bank's conduct amounted to a "wrongful, willful and/or knowing interference with the legitimate salvage yard business."

After appellants filed their first counterclaim, demand was made upon the bank for

production of documents. Upon reviewing the documents, appellants filed a motion to amend their counterclaim, alleging that the bank further breached its agreement with Hall and the appellants by forcing Hall to use the proceeds of the June 27, 1980, loan of $175,000 to first pay off preexisting debts Hall had with the bank not related in any way with the salvage yard business, instead of using the proceeds to purchase additional salvage to be sold in the normal course of business. These allegations are also contained in an affidavit by Hall filed concurrently with the motion to amend appellants' counterclaim.

As noted earlier, the trial court denied appellants' motion to amend their counterclaim and dismissed appellants' first counterclaim, finding the counterclaim failed to state a cause of action. We find the trial court erred in dismissing appellants' counterclaim and in denying appellants' motion to amend their counterclaim and reverse as to these issues.

Guidelines for pleading counterclaims are found in Rule 13, Wyoming Rules of Civil Procedure, which reads in part:

"(a) *Compulsory counterclaims.*—A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action.

"(b) *Permissive counterclaims.*—A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

\*       \*       \*       \*       \*       \*

"(e) *Counterclaim maturing or acquired after pleading.*—A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading.

"(f) *Omitted counterclaim.*—When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment."

■ Rule 13(f) quoted above allows a party to amend a counterclaim by leave of court if he has failed to set up such counterclaim "through oversight, inadvertence, or excusable neglect, or when justice requires." Leave to amend pleadings is to be freely given under Rule 15(a), W.R.C.P., unless the proposed amendment to the pleading will unduly prejudice the opposing party. *Johnson v. Aetna Casualty & Surety Company of Hartford*, Wyo., 608 P.2d 1299 (1980); and *Rose v. Rose*, Wyo., 576 P.2d 458 (1978). We have held that pleadings must show the operative facts involved to provide fair notice to the opposing party. In the Johnson case we said:

"The first question that we must address is whether the district court correctly dismissed this last complaint for failure to state a claim upon which relief can be granted. This court will only sustain such a dismissal if the complaint on its face shows that the plaintiff is not entitled to relief. A complaint is not subject to dismissal unless there is no doubt that the plaintiff cannot prove any set of facts that would entitle him to relief. *State Highway Commission v. Bourne*, Wyo., 425 P.2d 59, 63 (1967). Wyoming Rules of Civil Procedure are based upon the theory of notice pleading. Rule 8(a)(1), W.R.C.P. The plaintiff need only plead the operative facts involved in the litigation so as to give fair notice of the claim to the defendant. *Harris v. Grizzle*, Wyo., 599 P.2d 580, 583 (1979). And, as we have stated before, pleadings must be liberally construed in order to do justice to the parties and motions to dismiss must be sparingly granted. *Harris*, su-

pra, 599 P.2d at 583; *Bourne,* supra, 425 P.2d at 63." *Id.,* at 1302.

Of further enlightenment is the case of *Simpson v. Western National Bank of Casper,* Wyo., 497 P.2d 878 (1972). In that case Simpson, a contractor, brought a check to the bank to be deposited in the account of Wyant, a subcontractor of Simpson's. Simpson was concerned with the financial stability of Wyant and made inquiry of a bank officer regarding the same. The bank officer assured Simpson that all was going to be all right and that the money would be used by Wyant to pay for materials in the construction project upon which Simpson and Wyant were working. The bank deposited the money in Wyant's account, but used the money to pay other debts owed by Wyant to the bank instead of paying for building materials as promised. When the bank brought action against Simpson for stopping payment on his check to Wyant, Simpson defended by alleging, inter alia, that the bank was not a holder in due course and had not received the check for deposit in good faith. Trial to a jury resulted in a verdict for Simpson, but the trial court granted judgment to the bank notwithstanding the verdict.

On appeal, the bank claimed Simpson had failed to establish a prima facie case of fraud against the bank because he had failed to use the word "fraud" in his pleading. This court held that Simpson's answer was sufficient without specifically stating the word "fraud" since he alleged facts which, if proved, would establish fraud:

"Although the defendant did not use the term 'fraud' in his answer, he did allege facts, in an affirmative defense, which would show fraud as a conclusion of law. Also, the record discloses clearly that the parties themselves and the trial court, throughout the trial, considered and treated defendant's affirmative defense as a defense of fraud. Nothing different is claimed on appeal." *Id.,* at 879–880.

We then reinstated the jury verdict for Simpson finding there was ample evidence from which the jury could find fraud in that when the bank officer assured Simp-

son that all was going to be fine and that the money deposited would be used for building purposes, such statements were false and designed to mislead.

In accord with these cases, we think appellants' counterclaim in this case is sufficient to provide notice to the opposing party of their claim and thereby withstand a motion for dismissal based upon failure to state a claim. Furthermore, we find appellants' motion to amend their counterclaim should have been granted under Rule 13, W.R.C.P.

Reversed and remanded to the trial court for proceedings not inconsistent with this opinion.

ROONEY, Justice, dissenting.

I would affirm. The result reached by the trial court was equitably and legally proper. It must be emphasized that only the $175,000 mortgage of the bank was allowed priority over appellants' mortgage. This was exactly that which was bargained for by the parties when the bank agreed to make the loan to make possible the sale of the business by appellants to Hall.

Even if parol evidence were allowed to vary the terms of the written note and mortgage obligating the bank to make no additional loans to Hall, and accepting all of that said by appellants concerning the facts in this matter, appellants cannot possibly show any damage to them as a result of the bank's actions. Appellants complain about the bank's actions in making additional loans to Hall. If the loans had not been made, Hall would have defaulted much sooner. The loans kept Hall in business and enhanced the chance that he would be successful in paying his obligations to both appellants and the bank. The fact that this effort was unsuccessful is not the cause of damages to appellants.

Appellants received that for which they bargained. The loan proceeds were used to pay off their existing mortgage, to provide operating capital for the business and to pay off other notes due from Hall to the bank. Additional loans were made by the

bank to provide for inventory purchases and additional operating expenses. But appellants' mortgage was held by the trial court to be prior to anything owed to the bank except the original bank mortgage according to the bargain of the parties. Appellants cannot show injury from the transactions. They are in the same position as they would have been if the operation went as they claim it should have.

Once it is recognized that the trial court properly disposed of the claim of the bank, granting the claim in part but refusing to allow priority to the bank for any of Hall's obligations to the bank except the first mortgage, the contentions in the counterclaim and amended counterclaim cannot be sustained. Certainly, appellants' mortgage cannot be granted priority over the bank's first mortgage on the basis of any loss of that bargained for, and it then follows that there cannot be any basis for a claim of fraud. It is almost to the contrary. Appellants got more than they bargained for inasmuch as the bank kept Hall in business much longer than he would have been if the subsequent bank loans were not made. Obviously, appellants expected and wanted Hall to make a go of the business so that they could receive the full sale price for it. Appellants are business people. They knew the risks involved in the transaction. One of the essential elements of fraud is reliance on a false representation "to one's damage." *Anderson v. Foothill Industrial Bank*, Wyo., 674 P.2d 232, 238 (1984); *Johnson v. Soulis*, Wyo., 542 P.2d 867, 872 (1975). The counterclaim was properly dismissed since it shows on its face that appellants are not entitled to relief. *Johnson v. Aetna Casualty and Surety Co.*, Wyo., 608 P.2d 1299, 1302 (1980).

The bank also points to the fact that in order to grant that requested in the counterclaim, i.e., give appellants' mortgage a priority over that of the bank, the agreement to allow the bank's mortgage first priority would have to be rescinded. It notes that one seeking such a rescission for alleged fraudulent misrepresentation must do so promptly. *Meyer v. Ludvik*, Wyo., 680 P.2d 459, 466 (1984). Appellants had

notice of the second bank loan and mortgage when it was recorded on September 19, 1981. Action seeking rescission was not taken until March 7, 1984. A period of two and one-half years between cause and effect cannot be "prompt." Although the ground for dismissing the counterclaim was not enunciated by the trial court, the trial court's ruling can be upheld on any legally supportable theory. *Valentine v. Ormsbee Exploration Corporation*, Wyo., 665 P.2d 452 (1983).