**BIG–O TIRES, INC.;  Cheyenne Tire Center, Inc.;  and Scott Stone, Appellants (Defendants),**

v.

**Margherita SANTINI and Cowboy Dodge, Inc., Appellees (Plaintiffs).**

**Margherita SANTINI, Appellant (Plaintiff),**

v.

**BIG–O TIRES, INC.;  and Cheyenne Tire Center, Inc., Appellees (Defendants).**

Nos. 91–38, 91–39.

Supreme Court of Wyoming.

Sept. 11, 1992.

Peter K. Michael and William M. McKellar of Boley & McKellar, P.C., Cheyenne, for Big–O Tires, Inc., Cheyenne Tire Center, Inc., and Scott Stone.

Jane A. Villemez of Graves, Santini & Villemez, P.C., Cheyenne, for Margherita Santini.

Ernest W. Halle, Cheyenne, for Cowboy Dodge, Inc.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

URBIGKIT, Justice.

This appeal, as its major subject of attention, addresses whether the jury was suitably instructed in a defective retread tire case where the mix of causes of action included strict products liability and negligence, as well as an assertion of deceit and misrepresentation. The jury awarded a prorated $144,000 verdict for products liability and, in a separate verdict, awarded $50,000 for deceit. The products liability judgment was paid and this appeal addresses only the judgment awarded for deceit. Some of the defendants insist the instructions permitted the jury to award the plaintiff a double recovery of damages for her injuries. These same defendants also discern an abuse of discretion in the district court's apportionment of the award of plaintiff's costs among the various defendants. The plaintiff contends the district court erred in granting a motion for judgment notwithstanding the verdict in favor of one defendant on the deceit and misrepresentation cause of action.

We reverse the order granting the judgment notwithstanding the verdict, but otherwise affirm the judgments of the district court.

## I. ISSUES PRESENTED

In Case No. 91–38, appellants, Big–O Tires, Inc. (Big–O) and Cheyenne Tire Center, Inc. (Cheyenne Tire),[1] pose these issues:

I. Whether a plaintiff may be awarded double damages for personal injury— once based on product liability theories, and a second time based on a fraud theory[.]

II. Whether a district court abuses its discretion when it allows a defendant to pay only 3% of the plaintiffs costs, even though the jury has found that the defendant shared 38.5% of the fault ascribed to the defendants who went to trial[.]

In response to these assertions of error, appellee, Margherita Santini (Santini) poses these queries:

I. Whether a plaintiff is entitled to recover damages for her personal injuries due to defendants' fraud, where the jury was required to segregate plaintiff's damages due to fraud on a separate ver-

---

* Chief Justice at time of oral argument.

1. Cheyenne Tire is the local retailer and Big–O is the franchisor for Cheyenne Tire.

dict form, and where the jury was specifically instructed not to duplicate damages in compensating plaintiff.

II. Whether the trial court properly distributed costs among defendants.

Appellee, Cowboy Dodge, Inc., responds with this query:

Whether or not the district court abused its discretion in its allocation of the costs to be paid among the several defendants[.]

In Case No. 91–39, Santini states this single issue:

Whether substantial evidence in the record supports the jury's verdict against Scott Stone for deceit and misrepresentation.

And in response, Scott Stone (Stone), who was the President of Cheyenne Tire at the time Santini made her purchase, contends:

Whether the district court correctly rendered a judgment notwithstanding the verdict in favor of defendant Scott Stone.

The initial 1989 complaint alleged Santini's purchase of two "Proform" tires from Cheyenne Tire. Five months and about six thousand miles later, while driving in the eastbound lane of I–80, west of Cheyenne, Wyoming, the tread separated from the carcass of one of these tires, wrapped around the axle and caused Santini to lose control of the car. Santini was thrust sideways into a tractor-trailer truck which she was passing at the time the tire failed. The car rolled on to its top and slid down the highway until coming to repose. Santini was seriously injured in the accident. Her complaint stated causes of action for strict products liability, violation of the Wyoming Consumer Protection Act, breach of warranty, negligence, negligent supervision, punitive damages and, of particular significance to this appeal, deceit and misrepresentation.

## II. FACTS PRESENTED

We shall recite the evidence relating to the deceit and misrepresentation claim from a perspective most favorable to Santini. Its primary pertinence in this appeal is whether we must sustain Santini's claim that the district court erroneously granted judgment notwithstanding the verdict for Stone on the deceit and misrepresentation claim. Santini testified she was enticed into Cheyenne Tire by an advertisement which touted "Proform" tires. The advertisement did not identify the tires as being retreads, or remanufactured tires, and Santini claimed this was done intentionally. While she was at Cheyenne Tire, she was first shown more expensive tires, but when she asked about the "Proforms" the salesperson showed them to her with the representation they were "good, new tires." No mention was made to her that they were retreads or remanufactured tires and her sales receipt also only listed them as "Proforms." Santini associated the product name "Proform" with "performance," and said she would not have gone to Cheyenne Tire, nor would she have bought the tires in question, if she had known they were retreads. Stone did not sell Santini the tires at issue, but he did prepare the advertisement which prompted Santini to shop at Cheyenne Tire. He also trained his sales personnel to avoid using the terminology "retread" or "recap" in selling retreaded or remanufactured tires. In addition, expert testimony established that the tire carcass used in the defective tire was of a brand which many remanufacturers would not use in the retreading business because they are known to be subject to the very sort of failure which occurred in this instance.

Originally, Big–O, Cheyenne Tire, Stone, and Norva Corporation (the manufacturer of the defective tire) were named as defendants. Norva Corporation reached a settlement with Santini before trial. On July 20, 1990, the district court entered an order permitting joinder of Cowboy Dodge, Inc. Cowboy Dodge had serviced Santini's car on July 19, 1988. The service receipt indicates the car was brought in for service because the "left front wheel [was] noisy when turning," and the work performed on the car by the dealership was described as, "adj. all eng. mounts & rotate tires—front tire (bad)." Santini claimed that she did not see the notation on the invoice and was not given any other notice of the problem

with the tire, which had now been rotated to the rear axle of her car where a defect would be less noticeable.

### III. ARGUMENT—DOUBLE RECOVERY BASED ON THE DUAL VERDICTS

As their first issue, Big–O and Cheyenne Tire challenge instructions which they assert permitted the jury to award Santini a double recovery: one based on the theory of fault and a second based on the theory of deceit and misrepresentation. The contentions of both parties were summarized in these instructions to the jury:

Margherita Santini is the Plaintiff in this case. She has brought this action against Defendants Big O Tires, Inc., Cheyenne Tire, Inc., Scott Stone, and Cowboy Dodge, Inc., to recover for injuries that she sustained on August 8, 1988, when the left rear tire on her vehicle failed at highway speed on Interstate 80, west of Cheyenne. Specifically, Mrs. Santini contends that the tread and belt separated from the tire carcass and wrapped around the axle, causing the wheel to stop turning. As a result, Mrs. Santini alleges that her vehicle veered out of control, struck the semi tractor-trailer that she was passing and overturned. Mrs. Santini further contends that the failed tire was a retread which was sold to her as a new tire, and that she was not advised that the tire was a retread until after the accident.

Defendant Cheyenne Tire, Inc., is the franchised Big O Tire dealer which sold two tires to Mrs. Santini on March 9, 1988. Defendant Scott Stone was co-owner of Cheyenne Tire, Inc. at the time of this sale. Defendant Big O Tires, Inc., is a franchisor of retail tire stores, including Cheyenne Tire, Inc.

Mrs. Santini alleges that the failed tire was defective when Cheyenne Tire, Inc., sold it to her and that the Cheyenne Tire, Inc., salesperson failed to advise her that it was a retread. She further contends that Cheyenne Tire, Inc., and its owner, Scott Stone, committed deceit and misrepresentation by advertising and promoting Proform brand tires as new, when, in fact, they were retreaded, Acutread brand tires. Mrs. Santini also contends that Cheyenne Tire, Inc., breached the implied warranty of merchantability by selling a tire which was not fit for its intended use.

Mrs. Santini further contends that Big O Tires, Inc., as the franchisor of the local Big O Tire Store, is responsible for the wrongdoings of its franchisee. She further contends that Big O Tires, Inc., is liable to her for its failure to properly supervise the advertising and sales practices of its local franchisee.

Defendant Cowboy Dodge, Inc., serviced Mrs. Santini's car three weeks prior to the accident and discovered a bad tire. Mrs. Santini contends that Defendant Cowboy Dodge, Inc., is liable to her for failing to warn her that her tire was bad and created a dangerous condition, by rotating the tire to the rear of the vehicle where the defect was less noticeable, and for failing to correct this hazard.

Mrs. Santini contends that as a result of these actions by Defendants, she suffered severe injuries and damage when the tire failed and caused her vehicle to wreck.

Finally, Mrs. Santini contends that Big O Tires, Inc., Cheyenne Tire, Inc., and Scott Stone should be assessed punitive damages for their willful and wanton misconduct.

\* \* \* \* \* \*

Defendants deny that they are responsible for the injuries and damages which Plaintiff alleges to have sustained.

They contend that at the time of the sale, the tire was of merchantable quality and was not in a defective condition which rendered it unreasonably dangerous. Rather, Defendants contend that the tire became dangerous when it was damaged due to a road hazard after it left the possession of Cheyenne Tire.

Defendants contend that the accident was caused by a separation in the steel belts of the tire which was initiated due to damage caused by the road hazard and was not due to any defect in the tire.

Defendants further contend that Mrs. Santini was negligent in driving on the tire in a damaged condition because she failed to take appropriate action after she knew or should have known of the damaged condition of the tire.

Defendants also contend that Mrs. Santini was advised that she was purchasing a remanufactured tire at the time of the sale.

Defendant Big–O contends that it is not responsible for the acts of its franchisees because it does not control the actions or conduct of the franchisees, nor the advertising practices of the franchisees.

Defendants Big–O, Cheyenne Tire, Inc. and Scott Stone contend that they committed no willful or wanton misconduct and that punitive damages are not appropriate.

Defendant Cowboy Dodge, Inc., contends that Mrs. Santini was in fact warned of the bad tire and that the tire was not defective to a point where corrective action was needed.

The jury was also instructed that, "[a] direct cause of an injury is a cause which in direct, unbroken sequence produces the injury. It is one without which the injury would not have occurred." Following up on that instruction, the jury learned that there may be more than one cause of an injury and that such causes "do not always occur simultaneously. One cause may be continuous in operation and joined with another cause occurring at a later time." The jury was instructed as to Santini's burden of proof if she were to establish any or all of her various claims. The jury was also given Instruction No. 18A, and it forms the centerpiece of this controversy:

In regard to the claim for deceit and misrepresentation, should you find in favor [of] plaintiff on this theory, you may award damages directly caused by such deceit and misrepresentation to include:

(a) The difference in value of what plaintiff received in the transaction and its purchase price or other value given, and

(b) Any loss suffered otherwise as a consequence of plaintiff's reliance upon such deceit or misrepresentation.

The jury was then given two completely separate verdict forms. In answer to the questions on the first verdict form (products liability), the jury determined that: (1) the tire was defective and unreasonably dangerous and that it was a direct cause of the damage to Santini; (2) the implied warranty of merchantability was breached by Cheyenne Tire and that breach was a direct cause of the damage; (3) Cowboy Dodge was negligent and its negligence was a direct cause of damage; (4) Big–O was negligent in its supervision of its franchisee, Cheyenne Tire, and that negligence was a direct cause of damage. The jury also found Santini to be contributorily negligent and that her negligence was a direct cause of her injuries. Finally, the jury found that Norva Corporation was at fault in its retreading process and that fault was a direct cause of damage. The jury found Santini 10% at fault; Big–O 15% at fault; Cheyenne Tire 25% at fault; Cowboy Dodge 25% at fault; and Norva Corporation 25% at fault. The jury established the total amount of damages sustained by Santini at $144,000.

The second verdict form (deceit) provided in pertinent part:

1. Did either of the following defendants commit deceit and misrepresentation in the sale of the tire to plaintiff? (State either yes or no)

<u>yes</u> Cheyenne Tire, Inc.

<u>yes</u> Scott Stone

2. If you answered question No. 1, was such deceit and misrepresentation a direct cause of damage to plaintiff?

<u>x</u> Yes ___No

3. Is Big O Tires Inc., liable in damages for the deceit and misrepresentation of its franchisee Cheyenne Tire, Inc.?

<u>x</u> Yes ___No

4. What damages do you determine were directly caused to plaintiff by such deceit and misrepresentation. (Answer only if you find in favor of plaintiff on the deceit and misrepresentation theory.) Any damages which you choose to award

here may not be duplicative of those damages which you may choose to award under the concept of fault in the other verdict form.

$50,000.00

The district court then entered two judgments based on the two verdicts and granted judgment notwithstanding the verdict pursuant to W.R.C.P. 50 for Stone as to the deceit and misrepresentation verdict.

The essence of Big–O's and Cheyenne Tire's assertion of error is that Instruction No. 18A should not have included subsection (b) and that the damages awarded under that instruction were duplicative of damages awarded under the product liability verdict form. At trial, Big–O and Cheyenne Tire contended that only subsection (a) of Instruction No. 18A was pertinent to the case and that it could not be given because there was no evidence to support its "difference in value" language.

■ This case presents an unusual mix of defendants and theories of recovery, and the factual scenario is somewhat complex. The district court quite ably put together instructions which presented the jury's tasks to it in very plain and understandable language. Instruction No. 18A is derived from Restatement (Second) of Torts § 549 (1977) and accurately reflects its provisions. Big–O Tires and Cheyenne Tire rely heavily on this court's decision in *Reynolds v. Tice*, 595 P.2d 1318 (Wyo.1979) for the proposition that this court has recognized only two ways in which damages may be assessed in a deceit and misrepresentation case, i.e., "out of pocket costs" and the "value of the benefit of the bargain." It would be more accurate to say that *Reynolds* acknowledges that such was the status of the law at the time the case was decided. However, the decision quite plainly recognizes that the instructions which were given in that case were not adequate to avoid the real possibility of a double recovery and that suitable instructions must be given under such circumstances to avoid double recovery. *Id.* at 1323–26. Here, the district court's instructions were very clearly tailored to achieve just that goal.

Enlarging somewhat on our decision in *Reynolds,* we agree with the reasoning employed by the Minnesota Supreme Court in its decision in *B.F. Goodrich Co. v. Mesabi Tire Co., Inc.,* 430 N.W.2d 180 (Minn.1988). That is, the "benefit of the bargain" rule and the "out of pocket loss" rule may each serve salutary purposes depending upon the totality of circumstances in a given case. However, where application of those rules results in leaving a loss uncompensated, a trial court may properly allow recovery of the economic loss sustained. *Id.* at 183; and *see* J.F. Rydstrom, Annotation, *"Out of Pocket" or "Benefit of Bargain" as Proper Rule of Damages for Fraudulent Representations Inducing Contract for the Transfer of Property,* 13 A.L.R.3d 875 (1967). Here, there was evidence from which the jury could readily infer what was the out of pocket loss. Santini paid $25.95 for the failed tire, but her losses extended considerably beyond the loss of her bargain. The jury had determined the tire was not merchantable for the purpose intended and the evidence was clear the tire was of no further use, so her loss could be readily inferred to be at least $25.95. We do not think she would have been required to disprove that the tire did not have some residual value as a fishing-dock landing buffer. Thus, her evidence of reliance on the performance promised and the quality of the tire were the proper subjects of a damage claim since the significant damage was a very real physical injury proximately resulting from the failed tire (wrapped around the axle). *See generally* 17 Am. Jur. P.O.F. 81, *Automobile Tire Defects and Hazards,* esp. §§ 33–35 and 52–56 (1966); Cody W. Smith, Jr., Annotation, *Defective Tire,* 39 Am.Jur. P.O.F.2d 209 (1984); Richard J. Kohlman, Annotation, *Defective Tire Litigation,* 34 Am.Jur. Trials 603, esp. §§ 20–26, 77 and 80 (1987); and Joel E. Smith, Annotation, *Products Liability: Liability for Injury or Death Allegedly Caused by Defective Tire,* 81 A.L.R.3d 318 (1977).

■ Although we perceive no particular problem with the instructions given under the circumstances of this case, our

holding in *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.*, 714 P.2d 328, 334 (Wyo.1986) is really dispositive of this controversy. *See* Wyo.Stat. § 1–11–213 (1988). In *Rialto Theatre, Inc.*, we held that if the jury's verdict is consistent with the instructions and there is a perception that the verdict is somehow inconsistent, then an objection is necessary. In this instance, the jury's verdicts were read to the parties and Big–O and Cheyenne Tire bypassed and, hence, waived the opportunity to further illuminate the jury's verdict, if there was in fact some inconsistency or duplication in the damage awards. We, of course, assume the jury followed the instructions absent some clear evidence to the contrary. *Goggins v. Harwood*, 704 P.2d 1282, 1295 n. 17 (Wyo.1985).

Since the essential appellate contention addressed duplicate awards of damage, their challenge came to directly attack the form of the two verdicts. Inevitably, if the jury found liability for both theories, separate total amounts were required on each verdict form. The form of the second verdict (deceit) was entirely explicit: "Any damages which you choose to award here may not be duplicative of those damages which you may choose to award under the concept of fault in the other verdict form." This admonition was followed by a space into which the jury inserted the handwritten $50,000 total award.

Clearly, as determined as it may be, the jury intended supplementary amounts of $144,000 through the first verdict and the additional $50,000 in the second document, separately designated in the two different instruments. We will not look beyond this clearly stated intent at this time because Big–O and Cheyenne Tire did not elect to pursue any contention of impropriety or inconsistency (or misunderstanding) before the jury was excused in the completed trial proceeding. *See* Wyo.Stat. §§ 1–11–213 and 1–11–214 (1988). Wyo.Stat. § 1–11–213 provided a further deliberative requirement if any contended inconsistency was perceived. The responsibility, after rendition of a verdict, to ask for jury resubmission falls upon the disfavored litigant.[2]

This court has consistently imposed a duty upon counsel to raise objection to any claimed inconsistency or mistake in the verdict before the jury is dismissed. In *Dewitty v. Decker*, 383 P.2d 734 (Wyo.1963), the verdict included an injury award of only special damages without any general damages. The form, as signed by the jury foreman, had a blank space for general damages into which nothing was written. This court defined in resolution:

> [W]e do not think it harsh or unreasonable to require a litigant, when an opportunity is afforded during the trial, timely to bring a matter such as here to the attention of the trial court in order that it might be corrected, and failing in this that he shall not be heard here to complain. To hold otherwise would seem unfair to the jury, to the trial court, and to the other litigants, to say nothing of the unnecessary loss of time and expense.

*Id.* at 739–40. Plaintiff's neglect to request jury reconsideration of claimed improper verdict at the time after initial rendition and before jury dismissal was fatal to appellee's later presentation of claimed insufficiency or omission in the verdict upon appeal. The court restated the same requirement to avoid claimed error in jury verdict rendition in *Caterpillar Tractor Co. v. Donahue*, 674 P.2d 1276, 1284 (Wyo.1983) and then *Goggins*, 704 P.2d at 1296.

In result, the lack of assertion by either party before jury dismissal about any defect in the completed jury verdict form has

---

**2.** Those statutes provide:

> If a jury disagrees, or if when the jury is polled a juror answers in the negative, or if the verdict is defective in substance, the jury shall be sent out again for further deliberation and either party may require the jury to be polled by the clerk or court asking each juror if it is his verdict.

Wyo.Stat. § 1–11–213.

> If no disagreement is expressed and neither party requires the jury to be polled, or on polling each juror answers in the affirmative, the verdict is complete and the jury shall be discharged. If the verdict is defective in form only, it may be corrected by the court with the assent of the jurors before they are discharged.

Wyo.Stat. § 1–11–214.

**1176** ■                        ▬▬▬▬▬▬

the effect of "closing the book." *See* Wyo. Stat. § 1–11–214.

"If the verdict was inconsistent with the instruction of the court [or a double recovery resulted despite the explicit direction to the jury], the appellant is charged with the duty of raising that question at the trial level before the jury's discharge." *Goggins*, 704 P.2d at 1296, Thomas, J., specially concurring. Consequently, we will not disturb the jury's verdict or the present contested judgment resulting therefrom.

## IV. ARGUMENT—AWARD OF COSTS: JUDICIAL DISCRETION

Big–O and Cheyenne Tire also contend the district court erred in its award of costs. The district court awarded Santini a total of $7,098.50 as costs. Cowboy Dodge was directed to pay $225.63, Cheyenne Tire $4,295.54 and Big–O $2,577.33. The award of costs is within the sound discretion of the trial court. *Hashimoto v. Marathon Pipe Line Co.*, 767 P.2d 158, 168 (Wyo. 1989).

■ The argument boils down to this: Cowboy Dodge is required to pay only 3.18% of the total costs awarded, although it was found to be responsible for 25% of the fault apportioned among the actors in the negligence action by the jury's verdict. The mathematical calculation used, i.e., dividing Cowboy Dodge's assessment by the total award of costs, does not accurately represent the district court's decision. The jury awarded a total of $194,000 as damages. Of that amount, Cowboy Dodge was responsible for $36,000. Cowboy Dodge's percentage responsibility for the total damages is about 18.6%, but that does not really help to fully resolve the question either. It must also be taken into account that Cowboy Dodge was a late-comer to this litigation and only some of the awarded costs were incurred as a result of its role in the litigation. The case had been in progress for almost a year before Cowboy Dodge was joined as a party. In addition, counsel for Cowboy Dodge presented cogent and reasonable justification to the district court during the proceedings relating to the apportionment of the award of costs.

Under these circumstances and with a careful review of the record, we do not find any abuse of discretion.

## V. ARGUMENT—JUDGMENT NOTWITHSTANDING THE VERDICT GRANTED TO THE RETAILER'S REPRESENTATIVE

■ Finally, Santini asserts the district court erred in granting a judgment notwithstanding the verdict in favor of Stone. We have enunciated this as our standard of review:

In determining whether a motion for a directed verdict or JNOV was proper, we apply the same test on appeal as does the trial judge in considering the motions originally in that there are only questions of law. *Carey v. Jackson*, Wyo., 603 P.2d 868 (1979). The test to be applied is whether the evidence is such that without weighing the credibility of the witnesses, or otherwise considering the weight of the evidence, there can be but one conclusion reasonable persons could have reached, and such motions should be cautiously and sparingly granted. *Carey v. Jackson, supra.*

*Erickson v. Magill*, 713 P.2d 1182, 1186 (Wyo.1986). *See also Fisher v. Robbins*, 78 Wyo. 50, 319 P.2d 116 (1957) and Morris Massey, *Motion for Judgment Notwithstanding the Verdict and For New Trial*, 12 Wyo.L.J. 284 (1958). This court must give the evidence every reasonable inference in favor of the party against whom the judgment notwithstanding the verdict is granted. *Berry v. Iowa Mid–West Land & Livestock Co.*, 424 P.2d 409 (Wyo.1967). This court has determined that the test to be applied in granting a judgment notwithstanding the verdict is essentially the same as utilized to justify a directed verdict. *Cody v. Atkins*, 658 P.2d 59 (Wyo.1983).

In analogous situations, we have also held:

When the facts permit the drawing of more than one inference, it is for the jury to choose which will be utilized, and, if supported by substantial evidence, the

jury's choice will be held by us as conclusive.

*Howell v. Garcia,* 747 P.2d 1140, 1143 (Wyo.1987). *See Simpson v. Western Nat. Bank of Casper,* 497 P.2d 878, 880 (Wyo. 1972) and *Cimoli v. Greyhound Corp.,* 372 P.2d 170 (Wyo.1962).

■■■ The question presented is whether the established conduct of Stone in managing the retail facility did or did not justify his inclusion within the jury decision for award of the verdict based on the tort of deception. In our analysis, it is recognized that the district court was not justified and we cannot approve judicial trespass on the fact finding provence of the jury. *Cimoli,* 372 P.2d at 173. We would agree with Santini in appellate brief:

The jury's verdict in cases of fraud or deceit is as sacrosanct as in any other case. The trial court cannot set aside the verdict except in the complete absence of substantial evidence of fraud. *Simpson v. Western National Bank of Casper,* 497 P.2d 878, 880 (Wyo.1972).

To establish a case of fraudulent misrepresentation in a consumer sales transaction, the consumer must establish that the seller knowingly made a false representation of a material fact with the intent of inducing her to purchase the product, and that she was induced to make the purchase, to her detriment, by her reasonable reliance upon the seller's statements. *Britton v. Bill Anselmi Pontiac–Buick–GMC, Inc.,* 786 P.2d 855, 860 (Wyo.1990).

■■■ Credibility of the witnesses and the weight to be given their testimony is for the jury to determine. *Cimoli,* 372 P.2d at 173.

■■■ We need not recite the evidence earlier summarized in this opinion to recognize a viable jury issue provided by evidence that Stone put together a bait-and-switch sales program based on low priced, non-designated retread tires. If the switch did work, the advertised tires, without proper announcement of their real quality, would in effect be sold as new tires. The jury found deceit and we cannot disapprove by holding, as a further fact finding analysis, that inadequate evidence to support this decision had been presented at trial. Consequently, the entry of the judgment notwithstanding the verdict was in error and the judgment against Stone should be reinstated upon remand.

## IV. CONCLUSION

Affirmed, except for the order of the district court granting judgment notwithstanding the verdict for Scott Stone, which is reversed, and the case is remanded to that extent for further proceedings in accord herewith.